722 A.2d 1030

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Theodore JACKSON, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 22, 1998.

Decided Jan. 21, 1999.

38

Catherine Marshall, Grady Gervino, Philadelphia, for the Com.

Sheryl S. Chernoff, Mark Scott–Sedley, Philadelphia, for Theodore Jackson.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

The Commonwealth appeals from an order by the Superior Court reversing Theodore Jackson's judgment of sentence by the Philadelphia County Court of Common Pleas for convictions of two counts of robbery, conspiracy, and possession of an instrument of crime and remanding Jackson's case to the juvenile court. We reverse.

Following a certification hearing on January 17, 1995, the juvenile court ordered that Jackson, who was then sixteen years old, be tried as an adult. On October 16, 1995, in the criminal division, a jury convicted Jackson, and the trial court sentenced him to a mandatory minimum imprisonment of five to ten years for each of his robbery convictions to be served concurrently, with concurrent sentences of five to ten years for conspiracy, and two and one-half to five years for possessing an instrument of crime. Jackson appealed his case to the Superior Court on four grounds. On January 17, 1997, the Superior Court, in a published opinion, *Commonwealth v. Jackson*, 456 Pa.Super. 181, 690 A.2d 240 (1997), reversed and

remanded on the basis that the juvenile court abused its discretion in transferring his charges to the criminal division.

We granted allocatur to review the following two issues related to adult certification:

1. Did the Superior Court err by ruling that a juvenile court commits a gross abuse of discretion when it fails to explain its decision to reject a probation officer's recommendation against adult certification?

2. Did the Superior Court err in assuming that the juvenile court in the present case did not fully consider all of the relevant information before it in reaching a discretionary determination to transfer Jackson's charges to the criminal division?

*FACTS*

On December 28, 1994, Jackson and three (3) other men, all bearing firearms, entered an occupied Philadelphia bar at approximately 8:30 p.m. Jackson was fifteen (15) years old at the time. Jackson and his three co-conspirators ordered the patrons to lie on the floor and surrender their money and jewelry. One robber guarded the door. Spotting one man who did not immediately fall to the floor, Jackson rushed towards him and put his gun to the man's ear. After the two other men took money from the cash register, money, and jewelry from the patrons, all four robbers fled the bar.

A patron, Anthony Castle, pursued the four men, and a car chase ensued throughout Philadelphia. One of the robbers fired several rounds from his car at Mr. Castle, but no one was injured. Mr. Castle stopped his pursuit of the robbers and, shortly after that, he provided a description of the men to the police. The police searched the area and apprehended three of the four robbers, including Jackson. Mr. Castle identified Jackson as one of the perpetrators. The owner of the bar, Robert Harley, identified Jackson as the man who pressed a gun to his ear.

## ANALYSIS

### I. Probation Officer's Report

The Commonwealth contends first that the Superior Court erred by misinterpreting the role of a probation officer's report in a certification determination. Specifically, the Superior Court ruled that the juvenile court abused its discretion by certifying Jackson as an adult without explaining why the court chose to disregard the probation officer's recommendation contained in Jackson's juvenile file.

The Superior Court must not upset the certification decision of a juvenile court unless the court has either failed to provide "specific reasons for its conclusion that the juvenile is not amenable to treatment" or "the court committed a gross abuse of discretion." *Commonwealth v. Moss,* 518 Pa. 337, 341, 543 A.2d 514, 516 (1988) (quoting *Commonwealth v. Stokes,* 279 Pa.Super. 361, 367, 421 A.2d 240, 243 (1980)). The existence of facts in the record that would support a contrary result does not demonstrate a gross abuse of discretion. *Id.* at 341–42, 543 A.2d at 516. To rise to a level of gross abuse of discretion, the court rendering the adult certification decision must have misapplied the law, exercised unreasonable judgment, or based its decision on ill will, bias, or prejudice. *Commonwealth v. Rush,* 522 Pa. 379, 385 n. 1, 562 A.2d 285, 287 n. 1 (1989).

The stated purposes of the Juvenile Act,[1] 42 Pa.C.S. § 6301 et seq., include the supervision, care, and rehabilitation of minors, who, although having committed delinquent acts, would benefit less from an adult criminal sentence. 42 Pa.C.S. § 6301(b)(2). Without question, probation officers carry out an important function about juvenile rehabilitation. The legislature endowed probation officers with responsibilities for the care, protection, treatment, and rehabilitation of delinquent minors. *See* 42 Pa.C.S. § 6304 official comment (1976). Sec-

1. Act of July 9, 1976, P.L. 586, *as amended,* Feb. 29, 1980, P.L. 36. All references to the Juvenile Act are to the pre–1995 amendments. The 1995 amendments to the Juvenile Act became effective for all delinquent acts committed on or after February 11, 1996. 42 Pa.C.S. § 6301 et seq., *as amended,* Nov. 17, 1995, P.L. 1127.

tion 6304 of the Juvenile Act sets forth specific duties of probation officers. For instance, the Juvenile Act requires probation officers to make investigations, reports, and recommendations to the court regarding a juvenile arrested and charged with a delinquent act. 42 Pa.C.S. § 6304(a)(1). When the Commonwealth petitions the juvenile court to certify a juvenile as an adult for the commission of a crime or public offense, the probation officer assigned to the case must make a recommendation to the court.

In preparation for Jackson's certification hearing, a probation officer prepared a juvenile file. The contents of the file included Jackson's report card and attendance record, a psychological summary, and the probation officer's report. The probation officer recommended against certifying Jackson to stand trial as an adult. At the certification hearing, the juvenile court possessed Jackson's entire juvenile file. Jackson's counsel focused the attention of the court on some of the more laudable aspects of Jackson's background. Jackson was a minor, who had no previous contact with the adult or juvenile criminal system. Although Jackson's regular school had expelled him for assaulting a teacher, his counsel informed the court that Jackson's grades and attendance at a disciplinary school were good, and the disciplinary school had recommended his transfer back to regular school. Prior to his arrest, Jackson lived with his mother. Both of Jackson's parents told the probation officer that their son was generally a good person.

The Commonwealth countered the probation officer's recommendation by highlighting facts in the record presenting a less optimistic picture of Jackson's amenability to treatment in a juvenile system. First, the Commonwealth emphasized the adult nature and seriousness of the crime. Jackson participated in a premeditated, deliberate, and violent criminal activity with the potential for substantial bodily injury. Second, not only had Jackson been expelled from his regular school for assault, but also his first disciplinary school had transferred him to a second disciplinary school for possession of a BB gun.

Before the 1995 amendments to the Juvenile Act, a juvenile court could only transfer a minor's case to the adult criminal system if the following conditions were satisfied:

(1) The child was 14 or more years of age at the time of the alleged conduct.

(2) A hearing on whether the transfer should be made is held in conformity with this chapter.

(3) Notice in writing of the time, place, and purpose of the hearing is given to the child and his parents, guardian, or other custodian at least three days before the hearing.

(4) The court finds:

(i) that there is a prima facie case that the child committed the delinquent act alleged;

(ii) that the delinquent act would be considered a felony if committed by an adult; and

(iii) that there are reasonable grounds to believe all of the following:

(A) That the child is not amenable to treatment, supervision, or rehabilitation as a juvenile through available facilities, even though there may not have been a prior adjudication of delinquency. In determining this, the court shall consider the following factors:

Age.

Mental capacity.

Maturity.

The degree of criminal sophistication exhibited by the child.

Previous records, if any.

The nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the Juvenile Court to rehabilitate the child.

Whether the child can be rehabilitated prior to the expiration of the Juvenile Court jurisdiction.

Probation or institutional reports, if any.

The nature and circumstances of the acts for which the transfer is sought.

Any other relevant factors.

(B) That the child is not committable to an institution for the mentally retarded or mentally ill.

(C) That the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one, which would carry a sentence of more than three years if committed by an adult.

42 Pa.C.S. § 6355(a).

Completeness of a juvenile file greatly assists a juvenile court's fact finding and determination of adult certification. Because a probation officer frequently has the most comprehensive information about a delinquent youth, a juvenile court should dutifully review a probation officer's report and recommendation. However, a probation officer's report is only one factor that a court must consider when determining whether a minor is amenable to treatment as a juvenile. *See* 42 Pa.C.S. § 6355(a)(4)(iii)(A). The Juvenile Act places no greater or lesser weight on the probation officer's report than any of the other statutory factors before a juvenile court. In one case, the crime may be less sophisticated than in other cases, but the youth's prior history of delinquency may be extensive. In another case, a youth may have committed no prior crimes, but the present crime for which the minor is charged was particularly grave in nature. While the Juvenile Act requires that a juvenile court consider all of the amenability factors, it is silent as to the weight assessed to each by the court. A juvenile court cannot abdicate its duty to determine whether a youth is amenable to juvenile treatment. *Commonwealth v. McKee*, 307 Pa.Super. 12, 16, 452 A.2d 878, 880 (1982). The ultimate decision of whether to certify a minor to stand trial as an adult is within the sole discretion of a juvenile court.

Pursuant to the Superior Court's ruling, every time a certifying court disagreed with the recommendation of a probation officer, it would have to provide a detailed explanation for its decision. Such a requirement is not grounded in law. Except in murder cases, the burden is on the Common-

wealth to provide sufficient evidence to persuade a juvenile court to certify a minor to stand trial as an adult. *Commonwealth v. Greiner*, 479 Pa. 364, 369–71, 388 A.2d 698, 701–702 (1978). A juvenile court has the responsibility of determining whether the Commonwealth presented sufficient evidence to justify a transfer under the terms of the Juvenile Act. A juvenile court must consider all of the factors set forth in Section 6355 of the Juvenile Act, but it need not address, *seriatim*, the applicability and importance of each factor and fact in reaching its final determination.

## II. Adequacy of the Record

The Commonwealth contends next that the Superior Court incorrectly decided that the juvenile court in the present case failed to consider all of the relevant information before it. After reviewing the record, permitting testimony by three witnesses for the Commonwealth and three witnesses for the defense, and hearing argument from both sides, the juvenile court determined that Jackson was not amenable to treatment as a juvenile. In its decision, the juvenile court used Section 6355(a) of the Juvenile Act to frame the court's findings of fact and conclusions of law. The Superior Court concluded that, while in most cases the juvenile court's findings would have adequately supported an adult certification, in the present case, the reasons of the court were insufficient in light of the conflicting evidence. According to the Superior Court, the juvenile court did little more than provide a "boilerplate recitation" of the factors required by the Juvenile Act for consideration of amenability of juvenile treatment. *Jackson*, 456 Pa.Super. at 187, 690 A.2d at 243.

We cannot accept the Superior Court's conclusion, that in the presence of conflicting evidence, a juvenile court must advance a detailed explanation of its certification determination to demonstrate that the court carefully considered all of the evidence when making its decision. The presumption in this Commonwealth remains that if a court has facts in its possession, it will apply them. *See Commonwealth v. Devers*, 519 Pa. 88, 102, 546 A.2d 12, 18 (1988) (presuming that trial

court considered pre-sentencing report); *Commonwealth v. Lee,* 703 A.2d 470, 474 (Pa.Super.1997); *Commonwealth v. McGinnis,* 450 Pa.Super. 310, 317, 675 A.2d 1282, 1286 (1996); *Commonwealth v. McDonald,* 399 Pa.Super. 250, 258, 582 A.2d 328, 331 (1990). When evaluating the propriety of a certification decision, absent evidence to the contrary, a reviewing court must presume that the juvenile court carefully considered the entire record.

No law explicitly requires juvenile courts in this Commonwealth to provide a detailed explanation to justify a certification decision.[2] Yet, if the facts on the record are not sufficient to justify adult certification, the Commonwealth has failed to carry its burden. When a juvenile court certifies a minor as an adult, although the Commonwealth has not carried its burden of proof, the court has committed an abuse of its discretion, and the certification cannot stand.

Meaningful appellate review of a certification decision becomes onerous when the reviewing court can not discern a

2. As is the case with this Court, the United States Supreme Court has yet to address whether the fundamentals of due process require courts to provide a detailed statement of the reasons for adult certification. *See In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *cf. Greiner,* 479 Pa. at 368 & n. 3, 388 A.2d at 700 & n. 3 (ruling on burden of proof). In *Gault,* the United States Supreme Court held that the Federal Constitution guarantees a juvenile delinquent a timely notice of his hearing, a right to counsel, an opportunity to be heard, a right to confront witnesses, and a privilege against self-incrimination, but refused to address the effects of the Constitution on a number of other issues, including the juvenile court's failure to provide specific reasons to justify its conclusion. *Gault,* 387 U.S. at 10–13, 41, 55–58, 87 S.Ct. at 1434–36, 1451, 1458–60. In *Kent,* the United States Supreme Court reversed the trial court's decision to transfer a youth's case to the criminal court system because the juvenile court violated statutory requirements set forth in the Juvenile Court Act of the District of Columbia. *Kent,* 383 U.S. at 557, 561–62, 86 S.Ct. at 1055, 1057. Although the District of Columbia's juvenile delinquency statute did not require a formal hearing or formal statement of the reasons for transfer, the juvenile court violated the statute by failing to provide the defendant with an adequate hearing and explanation, which would permit meaningful appellate review of the transfer decision. *Id.* Because we are faced with no constitutional issues in the present case and we can decide this case based on the Juvenile Act and case law alone, we make no ruling as to the effects of due process on adult certification.

juvenile court's reasons for finding a youth not amenable to juvenile treatment. However, a juvenile court need not annunciate each of its reasons in a formal certification statement. Provided that the Commonwealth carried its burden of proof and the record reflects that the minor is not amenable to juvenile treatment, absent evidence that a juvenile court did not carefully consider the facts before it, a reviewing court should not upset the juvenile court's discretionary decision. *See Rush*, 522 Pa. at 386, 562 A.2d at 288; *Moss*, 518 Pa. at 342, 543 A.2d at 516–17.

In both *Rush* and *Moss*, this Court found no abuse of discretion by the juvenile courts when they decided to transfer the juvenile defendants to adult courts. *Id.* Neither of the juvenile courts in *Rush* nor *Moss* made detailed findings of fact, but both courts noted some of the facts upon which they based their decisions. *Id.* In *Rush*, the juvenile court emphasized the previous failed attempts by the juvenile system to supervise and treat the defendant and the inability of the juvenile system to rehabilitate the defendant before the jurisdiction of the juvenile court expired. *Rush*, 522 Pa. at 386, 562 A.2d at 288. In *Moss*, the juvenile court noted the number of charges against the defendant, the sophistication of the commission of the crimes, and the lack of a suitable, secure juvenile facility. *Moss*, 518 Pa. at 342, 543 A.2d at 516–17.

The Superior Court compares the present case with *Commonwealth v. Greiner, supra*, where we found that the juvenile court improperly certified a minor to stand trial as an adult. There, we held that for all crimes, except for murder, the Juvenile Act does not permit the nature of the conduct to justify the transfer from the juvenile system without a concomitant finding that the youth was not amenable to treatment as a juvenile. *Greiner*, 479 Pa. at 371–72, 388 A.2d at 702. In *Greiner*, the only evidence relevant to the issue of amenability was the testimony of a probation officer, which recommended against adult certification. *Id.* at 371, 388 A.2d at 702. Furthermore, the record indicated that the defendant had a stable family life, was an above average student, and had no history

of criminal or disciplinary problems. *Id.* Finding no evidence to justify adult certification, this Court determined that the juvenile court had nothing else other than the nature of the crime upon which to base its decision. *Id.* at 371–72, 388 A.2d at 702.

The situation in the present case in not analogous to *Greiner.* The record is replete with facts sufficient for the juvenile court to have concluded that Jackson is not amenable to juvenile treatment. The adult nature of the crime was clearly not the only factor upon which the juvenile court could base its decision. Unlike the defendant in *Greiner,* Jackson's scholastic and behavioral history does not paint a portrait of a model youth. The record also contains Jackson's admissions of prior drug and alcohol use. Additionally, the juvenile court was aware of Jackson's past record of anti-social behavior, which included assault. The juvenile file and the transcript of the certification hearing support the juvenile court's findings.

## CONCLUSION

Since Jackson presented no evidence to the contrary, the presumption remains that the juvenile court considered all of the facts in its possession. There is also no evidence that the juvenile court misapplied the law, exercised unreasonable judgement, or based its decision on ill will, bias, or prejudice. After reviewing the entire record, we find that sufficient evidence exists to justify the juvenile court's decision. The certification hearing transcript demonstrates that the juvenile court was aware of a number of facts from different sources bearing on all of the factors under its consideration. Additionally, on at least two occasions, the juvenile court noted that it had reviewed the contents of the juvenile file. Although the juvenile court did not provide a detailed explanation to justify its decision, we do not find the court's reasons so lacking as to prevent meaningful review. We, therefore, hold that the Superior Court erred in finding that the juvenile court abused its discretion.

We reverse the order of the Superior Court and reinstate the judgement of sentence of the Court of Common Pleas of Philadelphia County.

Justice NIGRO files a concurring opinion.

NIGRO, Justice, concurring.

While I join the Majority Opinion, I write separately to note my belief that the juvenile court fully satisfied the statutory requirements outlined in the Juvenile Act when determining whether Appellee should be certified as an adult. The record in the instant case plainly establishes that the court considered each of the factors set forth in 42 Pa.C.S. § 6355(a), as is all the Juvenile Act requires the court to do when making a certification decision. Specifically, in certifying Appellee as an adult, the court stated the following reasons for its decision:

One, the defendant was over the age of fourteen at the time of the alleged conduct;

Two, a hearing on whether the transfer should be made was held in conformity with the applicable statute;

Three, notice ... in writing of the time, place and purpose of the hearing was given to the defendant through counsel at least three days prior to the hearing;

Four, I have found that a prima facie case has been made out with respect to the charges set forth in each respective petition;

Five, that the delinquent acts would be considered a felony if committed by an adult;

Six, there are reasonable grounds to believe the following: one, that the defendant is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities even though there may not have been a prior adjudication of delinquency, which is the case in this particular situation. In reaching that determination, I have considered the following factors: I have considered the defendant's age, his mental capacity, his maturity, the degree of criminal sophistication exhibited by defendant. I have considered the nature and circumstances of the acts for which

the transfer is being sought. I have considered the contents of the juvenile file;

Seven, the defendant is not committable to an institution for the mentally retarded or mentally ill;

Eight, that the interests of the community require that the defendant be placed under legal restraint or discipline and the offense is one which would carry a sentence of more than three years if the defendant was an adult.

N.T., 1/17/95, at 61–63.

As I read the Juvenile Act, these findings are sufficient to support the adult certification of Appellee. Once the juvenile court follows the factors enumerated in 42 Pa.C.S. § 6355(a) and places its determination as to each factor on the record, it has satisfied, in my view, the statutory requirements of the Juvenile Act.

Thus, I agree with the Majority that the juvenile court did not err in certifying Appellee as an adult, and therefore, that the order of the Superior Court should be reversed.