J-S77012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| I. J.-W. | |
| Appellant | No. 2018 MDA 2015 |

Appeal from the Judgment of Sentence April 4, 2016
In the Court of Common Pleas of Northumberland County
Criminal Division at No(s): CP-49-CR-0001078-2015

BEFORE: PANELLA, J., OLSON, J., PLATT[*], J.

MEMORANDUM BY PANELLA, J.                    **FILED DECEMBER 12, 2016**

Appellant, I. J.-W., appeals from the judgment of sentence entered by the Court of Common Pleas of Northumberland County following Appellant's guilty plea to criminal conspiracy to commit robbery.[1] Appellant alleges that

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant purports to appeal the order entered October 13, 2015, which certified Appellant's case for adult criminal court. **See** Notice of Appeal, 11/5/15. However, the October 13 order was an interlocutory order. **See In the Interest of McCord**, 664 A.2d 1046, 1048 (Pa. Super. 1995) ("Where a juvenile appeals the transfer of his case to the criminal division or the denial of transfer from the criminal division, double jeopardy protections are not implicated. Such orders are, in every sense, interlocutory, and are not appealable until judgment of sentence has been entered.") Despite Appellant's error, this appeal is properly before us. The judgment of sentence was entered on April 4, 2016. Further, we will treat Appellant's notice of appeal as timely filed from the April 4, 2016 judgment of sentence. **See** Pa.R.A.P. 905(a)(5) (a notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated
*(Footnote Continued Next Page)*

the juvenile court erred and abused its discretion by certifying her for trial as an adult. After careful review, we affirm.

The relevant facts and procedural history are as follows. On July 30, 2015, police were notified that four female juvenile residents had stolen a vehicle and absconded from the Building Bridges program at Northwestern Academy in Coal Township, Northumberland County, Pennsylvania. Upon arrival at Northwestern Academy, Officer Matthew Hashuga spoke with Angel Wright, an employee of Northwestern Academy who had been assaulted by the four juveniles prior to their escape.

Wright had been sitting in the dormitory common room with Appellant, who was fourteen years of age at the time, and another juvenile, S.Q., when someone approached her from behind and wrapped a sheet around her head. Wright was repeatedly struck in the head, causing her to become dizzy and nauseous. The assault continued until Wright stated, "[j]ust take what you want." N.T. Certification Hearing, 10/7/15, at 9. At a certain point towards the end of the assault, the sheet slipped from her eyes and Wright observed Appellant standing over her, Appellant's bracelet scattered in pieces on the floor, and S.Q. on the other side of the room. Appellant removed Wright's staff keys from Wright's belt, tossed the keys to S.Q. and stood watch over Wright as S.Q. opened the staff station and removed

*(Footnote Continued)* ─────────────

as filed after such entry and on the day thereof). We have corrected the caption accordingly.

Wright's purse and other items from the station. Appellant subsequently instructed Wright to stand up, and led her by the wrist to a closet. Wright was locked in the closet while Appellant and the other juveniles escaped in Wright's vehicle.

Although Wright was not able to see the person who tied the sheet around her head, she concluded that it was Appellant, as Appellant was the only person located behind her with a sheet prior to the attack. Further, while Wright had the sheet tied around her head during the entire attack, the sheet shifted at one point and she was able to identify Appellant standing above her. From Wright's account, Officer Hashuga concluded that Appellant was the main actor in Wright's attack. Appellant was charged with robbery, three counts of aggravated assault, theft by unlawful taking, conspiracy to commit robbery, conspiracy to commit aggravated assault, and simple assault.

The Commonwealth requested that the juvenile court transfer Appellant's case to adult court. A certification hearing was held on October 7, 2015. At the hearing, Wright testified that she sustained multiple injuries to her face, neck, shoulders, and upper back because of the attack. Further, Wright states that the attack left her "afraid of everything." *Id*. at 16.

Jessica McKee testified on behalf of Dauphin County Children and Youth Services. McKee testified that Appellant had a long history with Children and Youth, and had been placed in approximately 38 different homes between 2006 and 2009. Appellant was initially placed in March 2006

and was removed in April 2007 at the request of the foster parents due to Appellant's disrespectful behaviors, aggression, and destruction of property. Appellant was placed with another family from April 2007 through January 2008, and though concerns with Appellant's behaviors were noted, she was ultimately removed due to the instability of the foster family. From January 2008 through August 2008, Appellant was placed into three different foster homes before being returned home. Appellant re-entered foster care in September 2008 and was returned home in June 2009.

Appellant did not have contact with Children and Youth again until May 2015. Appellant's mother reported that Appellant had been staying with a family friend, and that Appellant was engaging in physical altercations and was running away from the family friend's residence. Children and Youth took Appellant into their custody on May 5, 2015 and placed her at Stormbreak's Girls Home until May 13, 2015, when they released her to a family member. The following day, Appellant ran away from the family member's home. Appellant was subsequently placed at Schaffner Youth Center. While living at Schaffner, Appellant was involved in two physical altercations with peers and was physically and verbally aggressive towards staff members. Following a psychological evaluation at Schnaffer, an increased level of care for Appellant was recommended and she was placed in the Building Bridges program at Northwestern Academy.

Devin Yeager testified on behalf of Northumberland County Juvenile Probation. Yeager stated that prior to the instant charges, Appellant was on

probation for retail theft and other theft charges. In addition to her charged crimes, Yeager reported that Appellant was reported to have stolen a vehicle, but that the vehicle's owner did not wish to press charges. Despite these incidents, Yeager testified that Appellant was performing well academically. However, Appellant had frequent conflicts with teachers and significant absences from school. Further, because of Appellant's placements within the foster care system, Yeager reported that Appellant had been receiving services that she would receive in the juvenile court system for years. Due to Appellant's history, Yeager testified that he did not believe that Appellant was amenable to treatment in the juvenile court system.

Finally, Appellant's mother, M. C., testified on behalf of Appellant. C. testified that both she and Appellant's father had criminal histories and significant problems with drugs. C. testified that Appellant was forced to be a caretaker for her younger siblings at a young age, and that she was physically abused by her father to the extent that Appellant's father received child endangerment charges for his treatment of her.

Following the conclusion of testimony, the juvenile court found that based upon Appellant's placement history, treatment history, criminal history, the nature of the crime, and the fact that she was not committable to an institution for the mentally ill, there was enough evidence to certify the case to the adult court, permitting Appellant to be tried as an adult. On April 4, 2016, Appellant entered a guilty plea to criminal conspiracy to commit

robbery, and was immediately sentenced to time served to 23 months' imprisonment, followed by 1-year probation. This timely appeal follows.

On appeal, Appellant asserts that the trial court erred in certifying her case for adult court. *See* Appellant's Brief, at 5. Specifically, Appellant asserts that the court erred in determining that the Commonwealth established a prima facie case of aggravated assault pursuant to 42 Pa.C.S.A. § 6355(4)(i). *See id*. Additionally, Appellant argues that the Commonwealth did not prove that the transfer should have occurred as required by the factors set forth in 42 Pa.C.S.A. § 6355(4)(iii). *See id*. at 5-6.

Our standard of review for evaluating the certification decision of the juvenile court is as follows.

> The Superior Court must not upset the certification decision of a juvenile court unless the court has either failed to provide specific reasons for its conclusion that the juvenile is not amenable to treatment or the court committed a gross abuse of discretion. The existence of facts in the record that would support a contrary result does not demonstrate a gross abuse of discretion. To rise to a level of gross abuse of discretion, the court rendering the adult certification decision must have misapplied the law, exercised unreasonable judgment, or based its decision on ill will, bias, or prejudice.

*Commonwealth v. Jackson*, 722 A.2d 1030, 1032 (Pa. 1999) (internal citation and quotation marks omitted).

Turning to Appellant's first issue on appeal, Appellant challenges the juvenile court's determination that the Commonwealth presented sufficient evidence to support a *prima facie* case of aggravated assault necessary to

support the transfer of charges to adult court. **See** Appellant's Brief, at 5. Appellant argues that the Commonwealth was unable to show sufficient probable cause of aggravated assault because Wright was unable to identify her attacker and did not suffer from serious bodily injury. **See id**. at 8-9. We disagree.

In order to support a transfer of a juvenile matter to criminal court, the juvenile court must find that "there is a prima facie case that the child committed the delinquent act alleged." 42 Pa.C.S.A. § 6355(a)(4)(i). We have previously held that

> [a] *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime. The Commonwealth need not prove the defendant's guilt beyond a reasonable doubt. Rather the Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing the case to go to the jury. In determining the presence or absence of a *prima facie* case, inferences reasonably drawn from the evidence of record that would support a verdict of guilty are to be given effect, but suspicion and conjecture are not evidence and are unacceptable as such.

**Commonwealth v. Hendricks**, 927 A.2d 289, 291 (Pa. Super. 2007) (internal citations, emphasis, and quotation marks omitted).

The statute defining aggravated assault provides in relevant part, "[a] person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the

value of human life." 18 Pa.C.S.A. § 2702(a)(1). "Serious bodily injury" is defined as, "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

> Where the victim does not suffer serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding of an attempt to cause such injury. A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. An attempt under Subsection § 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury. A person acts intentionally with respect to a material element of an offense when … it is his conscious object to engage in conduct of that nature of to cause such a result. As intent is a subjective frame of mind, it is of necessity difficult of direct proof. The intent to cause serious bodily injury may be proven by direct or circumstantial evidence.

*Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa. Super. 2012) (internal citations and quotation marks omitted).

Here, contrary to Appellant's assertion, Wright identified Appellant as her attacker. Although the nature of the attack left Wright unable to see during much of the attack, Wright was able to reasonably infer that Appellant was the perpetrator. Wright noted that Appellant was the *only* person in the common room with a sheet prior to a sheet being tied around her head. Further, Wright testified that there were only two other people in the room with her prior to the attack, and Appellant was the *only* person located in the position necessary to commit the initial attack. Additionally,

although Wright was blindfolded with a sheet for most of the hits she received to her head, she testified that the sheet slipped at one point, and she was able to observe *Appellan*t standing over her, and Appellant's bracelet broken on the floor next to Wright.

Wright's testimony was certainly enough for the Commonwealth to show that Appellant was "probably the perpetrator" and fulfill its first obligation in establishing a *prima facie* case.

Further, we find that the Commonwealth has sufficiently established the "commission of a crime" necessary to establish a *prima facie* case. Even agreeing with Appellant purely for the sake of argument that the evidence does not support a finding that Wright suffered serious bodily injury from the attack, we find that there was enough evidence to support a finding that Appellant *intended* to cause serious bodily injury to Wright during the attack. Wright testified that she was blindfolded and repeatedly struck in the head. Wright noted that Appellant only ceased hitting her in the head when she told Appellant to take whatever she wanted.

Based upon the nature of the incident and the totality of the circumstances, it is reasonable to infer that the attack would have continued if Wright had not offered items to Appellant. We find that this evidence provided sufficient probable cause that Appellant intended to cause serious bodily injury to Wright to support the allegation that Appellant committed an aggravated assault. Thus, because probable cause is all that is needed to

support a *prima facie* case, we find Appellant's first issue on appeal to be without merit.

Next, Appellant challenges the public interest factor of 42 Pa.C.S.A. § 6355(a)(4)(iii), alleging that the Commonwealth failed to prove that the public interest would be served by certifying Appellant to be tried as an adult. *See* Appellant's Brief, at 5-6, 9-22. Specifically, Appellant alleges that the public interest would not be served by Appellant's certification as an adult for a number of reasons: (1) the impact of Appellant's attack on the victim was short term; (2) the community impact of Appellant's offense was minimal; (3) Appellant did not pose a threat to the safety of the public through her commission of the offense; (4) the nature and circumstances of the offense involved four girls, and Appellant, who was the youngest, was the only girl certified as an adult; and (5) Appellant is amenable to treatment as a juvenile. *See id*. None has merit.

The Juvenile Act provides that a juvenile 14 years of age or older at the time of the alleged crime, may have their case transferred to adult criminal court for prosecution. *See Commonwealth v. Rush*, 562 A.2d 285, 286 (Pa. 1989). In order to support a transfer to criminal court, the court must find, in pertinent part:

> (iii) that there are reasonable grounds to believe that the public interest is served by the transfer of the case for criminal prosecution. In determining whether the public interest can be served, the court shall consider the following factors:
>
> (A) the impact of the offense on the victim or victims;

(B) the impact of the offense on the community;

(C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of disposition alternatives available under this chapter and in the adult criminal justice system; and

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

   (I) age;

   (II) mental capacity;

   (III) maturity;

   (IV) the degree of criminal sophistication exhibited by the child;

   (V) previous records; if any;

   (VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

   (VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

   (VIII) probation or institutional reports, if any;

   (IX) any other relevant factors;

42 Pa.C.S.A. § 6355(a)(4)(iii). "Section 6355(g) places the burden of proof upon the Commonwealth to establish, by a preponderance of the evidence, that the public interest is served by the transfer of the case to criminal court and that a child is not amenable to treatment, supervision, or rehabilitation as a juvenile." ***Commonwealth v. In re E.F.***, 995 A.2d 326, 331 (Pa. 2010) (citing 42 Pa.C.S.A. § 6355(g)).

At the certification hearing, the juvenile court heard testimony from the victim of Appellant's attack, Wright, the Appellant's probation officer, Yeager, the Appellant's social worker, McKee, and the Appellant's mother, C. The court also heard argument from the parties, evaluated Appellant's Children and Youth placement history, Appellant's juvenile file, and Appellant's treatment history.

The evidence presented by the Commonwealth provided that Appellant was the main actor in a sophisticated criminal attack, which left its victim with long-term psychological injuries. Appellant's social worker noted that Appellant had a long history of receiving services through Children and Youth and that many of her placements were marked with assaultive and defiant behaviors. Appellant's juvenile probation officer testified that her review of the Appellant's prior delinquent behaviors and treatment history led her to believe that Appellant was no longer amenable to treatment within the juvenile system. Appellant presented evidence that she was the youngest of four actors in the attack and suffered from a highly dysfunctional family life.

The record indicates that the juvenile court properly considered all of these factors, as well as the additional factors required to be considered under 42 Pa.C.S.A. § 6355(a)(4)(iii). In reviewing the determination reached by the juvenile court in regards to Appellant, we note that

> [i]n the end, certification depends on a complex balancing of numerous factors, not the least of which is the general demeanor of the juvenile as observed by the juvenile court during the certification hearing, a factor which this Court is ill-equipped to evaluate on appeal. When a juvenile judge is provided with a comprehensive juvenile file and has the benefit of argument from prosecution and defense, both common sense and our Supreme Court's precedent require that we assume the trial court duly considered the evidence and arguments presented. In such cases, our focus on review must be limited to whether the record as a whole reveals an abuse of discretion. ...

**Commonwealth v. Saez**, 925 A.2d 776, 781 (Pa. Super. 2007) (quoting **Commonwealth v. McDonald**, 582 A.2d 328, 335 (Pa. Super. 1990)).

While Appellant does not agree with the manner in which the juvenile court weighed these factors, the weight given to the factors considered by the juvenile court will not, and cannot, be overturned by this Court when supported by evidence of record. Thus, we find that the juvenile court did not abuse its discretion, and consequently, Appellant's second issue on appeal merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2016