J-S03044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AZAIAH TAHIR WILLIAMS | : | |
| | : | No. 1877 EDA 2017 |
| Appellant | | |

Appeal from the Judgment of Sentence April 13, 2017
In the Court of Common Pleas of Wayne County Criminal Division at
No(s):  CP-64-CR-0000384-2015

BEFORE:   BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MARCH 01, 2018**

Appellant Azaiah Tahir Williams appeals from the judgment of sentence entered by the Court of Common Pleas of Wayne County after Appellant was charged as an adult and plead guilty to attempted murder and sexual assault for crimes he committed at the age of fifteen.  Appellant claims the trial court erred in denying his motion to decertify the case to juvenile court and abused its discretion in imposing an overly harsh and excessive sentence.

The trial court aptly summarized the factual background of the case as follows:

> In the late afternoon and early evening hours on the twenty-fourth (24th) day of September, [Appellant] was harassing residents by knocking on their doors.  One of the doors [Appellant] knocked on belonged to the victim, Dorothy Krasley.  Ms. Krasley was home alone and up until that day managed to care for herself quite capably.  [Appellant] entered Ms. Krasley's home uninvited and stabbed the eighty-three (83) year old woman in her neck,

_____

*   Former Justice specially assigned to the Superior Court.

back, and arm with a steak knife. While Ms. Krasley was lying and bleeding on the floor of her home, [Appellant] admitted that he went through her home and took possession of deposit slips and credit cards. To make an already horrific event worse, [Appellant] returned to where Ms. Krasley had been lying and according to his words "removed her clothes and raped her." He then left the bleeding Ms. Krasley alone.

When police arrived, they found a bloodied Ms. Krasley wearing only a white sweater and underpants. Medical personnel determined that she endured two (2) stab wounds to the back, one (1) stab wound to the throat, two (2) stab wounds to the abdomen, and numerous "slice type" wounds to various parts of her body, including her head, arms, and rib area. While at the scene, Ms. Krasley managed to inform police that [Appellant] entered her residence and stabbed her after she told [Appellant] that he could not use her phonebook or phone. Ms. Krasley made the same statement to three (3) separate people. Since that day, however, Ms. Krasley has been so traumatized by the sexual assault that she will not speak of it. As a result of her injuries, Ms. Krasley underwent a medically induced coma. Ms. Krasley suffered two punctured lungs and required surgery to reconstruct her bowel. When a sexual assault exam was performed, evidence of [Appellant's] semen was found in the underpants of Ms. Krasley. After four (4) weeks in the hospital and extensive rehabilitation, Ms. Krasley continues to suffer deficits as a result of the attack and her ability to live alone has been greatly compromised.

After [Appellant] left Ms. Krasley alone and bloodied, he returned home to his legal guardians. On the thirtieth (30th) day of September, six (6) days after the incident, [Appellant's] legal guardians contacted police after finding Ms. Krasley's credit card in [Appellant's] bedroom. [Appellant's] guardians informed police about [Appellant's] history of stealing and arranged to meet at the PSP barracks for an interview. The legal guardians informed police that they search [Appellant's] bedroom daily because of his history of stealing and found Ms. Krasley's credit card under [Appellant's] mattress and her deposit slips in [Appellant's] backpack.

Initially, when asked by police how he came to have Ms. Krasley's credit card, [Appellant] informed them that he found it on a road. [Appellant] further lied to police by informing them

that he was serving detention at school on the day in question and did not know Ms. Krasley and that she was assaulted. After further questioning, [Appellant] said that Ms. Krasley had a knife in her hand when she answered his knock on the door. [Appellant] stated that he let himself in and disarmed Ms. Krasley after she informed him that he could not enter her home. According to [Appellant], he stabbed Ms. Krasley five (5) times when she tried to push him out of her home because he was afraid that she would take the knife from him and stab him. After stabbing Ms. Krasley, [Appellant] admitted that he went through Ms. Krasley's home and took deposit slips and a credit card from her purse before he removed her clothes and "raped her." When questioned by a Probation Officer in regards to his statement that he "raped her," [Appellant] stated that he was almost ninety percent (90%) positive that he didn't rape her; however, he felt angry and wanted to desecrate her so he pulled down her pants and underwear and masturbated over top of her until he ejaculated. When asked whether he thought Ms. Krasley was dead when he left her home, [Appellant] replied "no."

With respect to [Appellant's] criminal background, [Appellant] has an extensive juvenile history. [Appellant] received an informal adjustment for Possession of a Weapon on School Property, a summary harassment, and an adjudication just days before the assault in the present case. The informal adjustment involved [Appellant] bringing a three inch saw blade to school and rubbing it on a student's arm. The summary harassment involved [Appellant] hitting and kicking an autistic student, taking his glasses and breaking them. The charge which resulted in an adjudication was an incident where [Appellant] allegedly entered an apartment and when apprehended was found to have a hatchet and a small Samurai sword.

Trial Court Opinion, 5/15/17, at 2-4.

In connection with his assault of Ms. Krasley, Appellant was charged as an adult with attempted homicide, rape (forcible compulsion), burglary (overnight accommodations, person present), robbery (inflict serious bodily injury), aggravated assault, and sexual assault. Appellant filed a Petition for Decertification to the juvenile court. The defense presented the report of Dr.

Frank M. Dattilio, Ph.D., ABPP, who offered expert opinion in support of decertification. In response, the Commonwealth presented the report of Dr. John O'Brien, M.D., J.D., who offered expert opinion against decertification. After a hearing at which both experts testified, the lower court denied the defense's motion for decertification.

On December 19, 2016, Appellant entered a guilty plea to attempted homicide and sexual assault. On April 13, 2017, the lower court imposed an aggregate term of twenty-five to fifty years' imprisonment in a State Correctional Institution. Appellant filed post-sentence motions, which were subsequently denied. This timely appeal followed. Appellant complied with the lower court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review on appeal:

I.     Whether the trial court, sitting as the decertification court, committed a gross abuse of discretion in denying Appellant's Motion for Decertification?

II.    Whether the trial court abused its discretionary sentencing powers in sentencing a 17 year old juvenile with a zero Prior Record Score to 25 to 50 years imprisonment constituting an overly harsh and excessive sentence and abusing its sentencing discretion?

Appellant's Brief, at 7.

First, we review Appellant's challenge to the trial court's denial of his request to decertify the case to juvenile court. As an initial matter, we note that Appellant did not waive his right to challenge the trial court's decision to

- 4 -

deny his decertification request when he entered a guilty plea. Our Supreme

Court has further explained:

> Absent unusual circumstances, a guilty plea constitutes a waiver of any non-jurisdictional defects or defenses. However, since one of the prime purposes of the Juvenile Act is to spare from adult punishment certain youths whose behavior would necessarily render them guilty of adult crimes ... and since the decision to, or not to transfer is interlocutory and thus only appealable after sentencing[,] we find the instant challenge to be properly preserved.

***Commonwealth v. Pyle****, 462 Pa. 613, 617, 342 A.2d 101, 103 n. 4 (1975)

(citations omitted).

In reviewing the trial court's denial of a motion for decertification, this

Court has provided the following:

> The Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq*., is designed to effectuate the protection of the public by providing children who commit 'delinquent acts' with supervision, rehabilitation, and care while promoting responsibility and the ability to become a productive member of the community. 42 Pa.C.S.A. § 6301(b)(2). The Juvenile Act defines a 'child' as a person who is under eighteen years of age. 42 Pa.C.S.A. § 6302. Typically, most crimes involving juveniles are tried in the juvenile court of the Court of Common Pleas.
>
> Our legislature, however, has deemed some crimes so heinous that they are excluded from the definition of 'a delinquent act.' Pursuant to 42 Pa.C.S.A. § 6322(a) and § 6355(e), when a juvenile is charged with a crime, including murder or any of the other offenses excluded from the definition of 'delinquent act' in 42 Pa.C.S.A. § 6302, the criminal division of the Court of Common Pleas is vested with jurisdiction. ***See*** 42 Pa.C.S.A. § 6302.[1]

_____

[1] Section 6302 of the Juvenile Act excludes rape, aggravated assault, robbery, and attempted murder from the definition of a "delinquent act" where a deadly

- 5 -

When a case involving a juvenile goes directly to the criminal division, the juvenile can request treatment within the juvenile system through a transfer process called 'decertification.' To obtain decertification, it is the juvenile's burden to prove, by a preponderance of the evidence, that transfer to the juvenile court system best serves the public interest. 42 Pa.C.S.A. § 6322(a).

Pursuant to § 6322(a), the decertification court shall consider the factors contained in § 6355(a)(4)(iii) in determining whether the child has established that the transfer will serve the public interest. These factors are as follows:

(A) the impact of the offense on the victim or victims;

(B) the impact of the offense on the community;

(C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

(I) age;

_____

weapon was used during the commission of the offense. 42 Pa.C.S.A. § 6302, "Delinquent Act" (2)(ii)(A), (2)(ii)(C), (2)(ii)(D), and (2)(ii)(I). As a result, pursuant to Section 6322, it was proper to commence prosecution of Appellant's offenses in the court of common pleas criminal division rather than in juvenile court. 42 Pa.C.S.A. 6322(a).

(II) mental capacity;

(III) maturity;

(IV) the degree of criminal sophistication exhibited by the child;

(V) previous records, if any;

(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

(VIII) probation or institutional reports, if any;

(IX) any other relevant factors.

42 Pa.C.S.A. § 6355(a)(4)(iii).

While the Juvenile Act requires that a decertification court consider all of these factors, it is silent as to the weight assessed to each by the court. However, when a juvenile seeks to have his case transferred from the criminal division to the juvenile division, he must show that he is in need of and amenable to treatment, supervision or rehabilitation in the juvenile system. If the evidence presented fails to establish that the youth would benefit from the special features and programs of the juvenile system and there is no special reason for sparing the youth from adult prosecution, the petition must be denied and jurisdiction remains with the criminal division.

The ultimate decision of whether to certify a minor to stand trial as an adult is within the sole discretion of a decertification court. This Court will not overturn a decision to grant or deny decertification absent a gross abuse of discretion. An abuse of discretion is not merely an error of judgment but involves the misapplication or overriding of the law or the exercise of a

manifestly unreasonable judgment based upon partiality, prejudice or ill will.

*Commonwealth v. Thomas*, 67 A.3d 838, 841–43 (Pa.Super. 2013) (quoting *Commonwealth v. Brown*, 26 A.3d 485, 491–493 (Pa.Super.2011)) (quotation marks and footnote omitted). Further, our Supreme Court has clarified that "[a] juvenile court must consider all of the factors set forth in Section 6355 of the Juvenile Act, but it need not address, *seriatim,* the applicability and importance of each factor and fact in reaching its final determination." *Commonwealth v. Jackson*, 555 Pa. 37, 46, 722 A.2d 1030, 1034 (1999).

In this case, Appellant admits that the trial court did address each of the factors set forth in Section 6355(a)(4)(iii) in its opinion supporting its decision to deny decertification. However, Appellant argues that the trial court unfairly emphasized the severity of the crime and did not give sufficient weight to his "age, intellect, upbringing, lack of family, lack of criminal sophistication, unremarkable criminal history, potential rehabilitation, amenability to treatment, mental health, and substance abuse." Appellant's Brief, at 21. Appellant also suggests that the trial court dismissed the testimony of defense expert Dr. Dattilio and unfairly favored the expert opinion of Commonwealth expert Dr. O'Brien.

In this case, the trial court's November 22, 2016 opinion thoroughly and thoughtfully addresses its considerations of the factors set forth in Section 6355 that it made in reaching its decision to deny Appellant's request for decertification. As we find the trial court did not commit a gross abuse of

discretion in reaching its conclusion, which is supported by the record, we find Appellant's challenge to be meritless.

Second, we review Appellant's claim that the lower court abused its discretion in imposing an "overly harsh and excessive sentence." Appellant's Brief, at 7. While Appellant concedes that all of his sentences fall within the standard range of the sentencing guidelines, Appellant specifically argues that "the consecutive nature of the sentences and the resulting aggregate sentence are excessive even in light of [Appellant's] loathsome and abhorrent criminal conduct." Appellant's Brief, at 25.

Appellant has raised a challenge to the discretionary aspects of his sentence. It is well established that:

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.

***Commonwealth v. Taylor***, 137 A.3d 611, 618 (Pa.Super. 2016)

Upon review of the record, we note that Appellant failed to preserve his challenge to the consecutive nature of his sentences in the lower court at sentencing or in his post-sentence motion. *See Taylor*, *supra*. Rather, Appellant claimed that the lower court abused its discretion in (1) failing to consider various mitigating factors, such as his troubled upbringing and his lack of a criminal record, and (2) in improperly considering facts related to charged offenses to which Appellant did not enter a guilty plea. Post Sentence Motion, 4/21/17, at 2.[2] Therefore, Appellant has waived his challenge to the consecutive nature of his sentences by failing to properly preserve it before the trial court.

Moreover, Appellant also failed to include his specific challenge to the consecutive nature of his sentences in his statement pursuant to Pa.R.A.P. 1925(b). The trial court's order filed June 15, 2017 informed Appellant that "any issue not properly included in the [Rule 1925(b)] Statement timely filed and served shall be deemed waived. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"). As Appellant did not include this particular sentencing challenge in his Rule 1925(b) statement, his claim is waived on this basis as well.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

[2] Appellant does not raise or develop these claims on appeal. As a result, we need not review them further.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/1/18

IN THE COURT OF COMMON PLEAS OF THE 22ND JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA
COUNTY OF WAYNE

COMMONWEALTH OF PENNSYLVANIA, :

VS.                                           :

AZAIAH TAHIR WILLIAMS,             :
        Defendant                   :    NO. 384-CRIMINAL-2015

## OPINION

In the above captioned case, Defendant is charged with Rape by Forcible Compulsion (F1); Burglary – Overnight Accommodation, Person Present (F1); Robbery with Serious Bodily Injury to Another (F1); Attempted Criminal Homicide (F1); Aggravated Assault – Deadly Weapon (F2); and Aggravated Assault – Serious Bodily Injury (F1). Defendant was sixteen (16) days away from his sixteenth (16th) birthday when the alleged crimes were committed. On December 31, 2015, Defendant filed a Motion for Decertification. This Court held a Decertification Hearing on October 19, 2016. Defendant's Motion was denied at the conclusion of said hearing. This Court issues the following written opinion in support of its October 19, 2016 Decision.

### Decertification

Pursuant to 42 Pa. C.S.A. § 6322(a), when a juvenile has committed a crime, which includes murder, or any of the other offenses listed under paragraph 2(ii) or (iii) of the definition of "delinquent act" in 42 Pa. C.S.A. § 6302, the criminal division of the Court of Common Pleas is vested with jurisdiction. Likewise, 42 Pa. C.S.A. § 6355(e) explains that charges of murder, or any of the other offenses listed under paragraph (2)(ii) or (iii) of the definition of "delinquent act" in 42 Pa. C.S.A. § 6302, requires that the offense be prosecuted in the criminal division. When a





Page 1 of 8

SCANNED

case goes directly to criminal division, the juvenile has the option of requesting treatment within the juvenile system through a transfer process of "decertification." Com. v. Aziz, 724 A.2d 371, 373 (Pa. Super. 1999). In determining whether to transfer such a case from criminal division to juvenile division, "the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest." 42 Pa. C.S.A. § 6322(a).

Pursuant to Section 6322(a), the decertification court shall consider the factors contained in Section 6355(a)(4)(iii) in determining whether the child has established that the transfer will serve the public interest. The statutorily set factors to be considered are as follows.

(A)  The impact of the offense on the victim or victims;

(B)  The impact of the offense on the community;

(C)  The threat to the safety of the public or any individual posed by the child;

(D)  The nature and circumstances of the offense allegedly committed by the child;

(E)  The degree of the child's culpability;

(F)  The adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G)  Whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

    I.  Age;

    II.  Mental capacity;

    III.  Maturity;

    IV.  The degree of criminal sophistication exhibited by the child;

    V.  Previous records, if any;

VI.     The nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

VII.    Whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

VIII.   Probation or institutional reports, if any;

IX.     Any other relevant factors

42 Pa. C.S.A. § 6355(a)(4)(iii). The ultimate decision of whether to certify a minor to stand trial as an adult is within the sole discretion of a decertification court. Com. v. Jackson, 722 A.2d 1030, 1034 (Pa. 1999). A decertification court must consider all of the factors set forth in Section 6355 of the Juvenile Act, but it need not address, *seriatim*, the applicability and importance of each factor and fact in reaching its final determination. Id.

## A.     The impact of the offense on the victim or victims

The impact of the offense on the victim, Dorothy Krasley, is profound. Ms. Krasley was eight-three (83) years old when the Defendant allegedly entered her home and stabbed her in the neck, chest and back with a steak knife. After being repeatedly stabbed, the Defendant allegedly raped a profusely bleeding Ms. Krasley. The physical and emotional impact of these heinous crimes is immeasurable.

## B.     The impact of the offense on the community

The impact of the offense on the community is also profound. A lot of unease is created when an eighty-three (83) year old women is brutally victimized in her own home by a complete stranger.

C.    **The threat to the safety of the public or any individual posed by the child**

The threat to the safety of the public or any individual posed by the child is high. Since early childhood, the Defendant has committed various violent acts. The various acts include kicking his foster family's dog, stabbing a classmate with a compass, and threatening a classmate with a sawblade. All of these incidents occurred while the Defendant was receiving medication and therapy for his mental health issues. Despite mental treatment, the Defendant has not shown any improvement; in fact, the record shows a progression in Defendant's violent behavior. This progression is alarming and unpredictable.

D.    **The nature and circumstances of the offense allegedly committed by the child**

The nature and circumstances of the offenses allegedly committed by the child are appalling. On September 24, 2015, the Defendant allegedly proposed to two (2) companions that they should go house to house, knocking on people's doors, asking for money. When the Defendant knocked on the door to Ms. Krasley's residence, an eighty-three (83) year old woman confronted him. The Defendant allegedly pushed his way into Ms. Krasley's home and stabbed her in the neck, chest and back with a steak knife. While Ms. Krasley was lying and bleeding on the floor, the Defendant allegedly went through her belongings and took various items, including credit cards. Before leaving Ms. Krasley's residence, the Defendant allegedly raped her or at least denigrated Ms. Krasley by ejaculating onto her.

E.    **The degree of the child's culpability**

The degree of the child's alleged culpability is high. The Defendant not only created a plan to steal from unsuspecting victims, but also acted consistent with that plan by knocking on the door

to Ms. Krasley's residence. Although Defendant informed Dr. Dattilio and Dr. O'Brien that he was under the influence of hallucinogens and ecstasy when the crimes were committed, this Court is not persuaded that Defendant's actions were influenced by drugs; the Defendant never reported his drug use to police and was able to clearly recall the events of September 24, 2015.

**F.  The adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system**

Dr. Dattilio recommended that the Defendant be placed in Danville Juvenile Detention Center. This Court is not persuaded by Dr. Dattilio's testimony. Despite having access to medication and therapy for mental health issues since early childhood, the record shows a progression in Defendant's violent behavior.

**G.  Whether the child is amenable to treatment, supervision or rehabilitation as a juvenile.**

This Court does not find the child to be amenable to treatment, supervision or rehabilitation as a juvenile.

I.  **Age:** The Defendant is currently seventeen (17) years old.

II.  **Mental capacity:** According to Dr. Dattilio and Dr. O'Brien, the Defendant has an average IQ. However, the Defendant scored well above average on the Verbal Comprehension Index.

III.  **Maturity:** This Court perceives the Defendant to be a mature young adult; there was no evidence indicating otherwise.

IV. **The degree of criminal sophistication exhibited by the child:** The degree of criminal sophistication exhibited by the child is high. The Defendant not only created a plan to steal from unsuspected victims, but also acted consistent with that plan by knocking on the door to Ms. Krasley's residence. A high degree of criminal sophistication is also exhibited by evidence that the Defendant hid credit cards stolen from Ms. Krasley under his mattress.

V. **Previous records, if any:** The Defendant has been in the Juvenile System as a dependent child since the age of two (2). Since early childhood, the Defendant has committed various violent acts. The various acts include kicking his foster family's dog, stabbing a classmate with a compass, and threatening a classmate with a sawblade. In July of 2015, two (2) short months prior to the current incident, the Defendant was found by law enforcement living on the streets in Scranton, Pennsylvania with a hatchet and knife in his possession. In connection with the Scranton incident, the Defendant was adjudicated delinquent on September 20, 2015 and identified as a juvenile in need of treatment, supervision and rehabilitation.

VI. **The nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child:** At the age of ten (10), the Defendant went through the Lehigh County Juvenile System when he brought a sawblade to school and threatened a classmate with it. The Defendant received a consent decree

as a result of this offense. Despite going through the Lehigh County Juvenile System, the Defendant continued to be defiant and violent.

**VII.** **Whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction:** This Court does not find that the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction. According to Dr. O'Brien, the Defendant has behavioral problems that do not respond to treatment. This Court finds Dr. O'Brien's assessment to be more accurate and worthy of weight than Dr. Dattilio's assessment owing in part, but not entirely, to Dr. Dattilio's failure to disclose the results of the MMPI and the consent decree received by the Defendant when he was ten (10) years of age.

**VIII.** **Probation or institutional reports, if any:** Reports from the Wayne County Correctional Facility, where the Defendant is currently being detained, advises that the Defendant has made plans to escape, plans to kill others, and plans to hang himself with shoelaces. According to Dr. Dattilio, the Defendant informed him that he did not intend to act on any of those plans. Other reports from the Wayne County Correctional Facility indicate that the Defendant argues with Correctional Officers and refuses to follow orders.

**IX.** **Any other relevant factors:** The Defendant demonstrated a callousness for the value of human life when he left Ms. Krasley profusely bleeding without contacting someone for help. The Defendant's flat demeanor during the Decertification Hearing also demonstrated to this Court a lack of remorse.

## Conclusion

The Defendant has failed to establish by a preponderance of the evidence that the transfer from criminal division to juvenile division will serve the public interest.

BY THE COURT

DATE: _11-22-16_

RAYMOND L. HAMILL
PRESIDENT JUDGE
22ND JUDICIAL DISTRICT

cc: Richard B. Henry, Esq.
District Attorney

KW