J-S06028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NAZEER TAYLOR | : | |
| | : | |
| Appellant | : | No. 856 EDA 2017 |

Appeal from the Judgment of Sentence January 31, 2017
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0003166-2014

BEFORE:  BOWES, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:         **FILED SEPTEMBER 10, 2018**

Nazeer Taylor appeals from the judgment of sentence entered following his convictions for rape of a child and related charges. Taylor claims the trial court erred in certifying his case to criminal court, failing to grant a mistrial, and precluding use of psychiatric testimony regarding the victim, A.O. We affirm.

Taylor was charged in a delinquency petition with multiple counts stemming from the sexual abuse of his foster brother, A.O., from July 2012 through August 2013. Taylor was 15 years old at the time of the crimes, and A.O. was 11 years old. Taylor's date of birth is September 12, 1996, and he is now over the age of 21. The juvenile court held a certification hearing on April 2 and 25, 2014, to determine whether to transfer the case to criminal court.

At the hearing, A.O. testified that the abuse occurred while he and Taylor were living with their foster mother, Gloria Parker ("Foster Mother"), and began shortly after A.O. began the sixth grade. N.T. Certification Hearing, 4/2/14, at 9, 11-30. A.O. stated that Taylor threatened to "beat [him] up" if he reported the abuse to anyone. *Id.* at 19. A.O. also testified that the assaults caused physical damage that affected his ability to control his bowel movements. *Id.* at 33.

Foster Mother testified that she observed behavioral changes in A.O., who "was trying to pull his tongue out of his mouth and . . . soiling his clothing." *Id.* at 79-80. Foster Mother also described a time when she discovered Taylor and A.O. in the bathroom together. *Id.* at 84-85.

The Commonwealth presented the expert testimony of Michael Yoder, a supervisor with the Montgomery County Juvenile Probation Department, regarding amenability to treatment and the options available in the juvenile and adult systems. N.T., 4/25/14, at 76, 78. He testified that the allegations against Taylor were not typical of juvenile sex offender behavior, given the degree and seriousness of the crimes, and the sophistication displayed by Taylor in committing the crimes. *Id.* at 88-89. He noted that Taylor committed the crimes "while he was in foster home placement, under the roof of the foster parents while the foster parents were at home, [by] going into the victim's room and . . . into the bathroom." *Id.* Taylor also committed the assaults after having been convicted of burglary and undergoing intensive therapy treatment. *Id.* at 89. Yoder explained that residential treatment for

sex offenders takes a minimum of two years, and that the juvenile system would retain jurisdiction over Taylor for only one year after his release from such a program. *Id.* at 90-91. Yoder therefore opined that Taylor was not amenable to treatment in the juvenile system. *Id.* at 90. Instead, Yoder recommended the youthful offender program at the State Correction Institution at Pine Grove. *Id.* at 91. Yoder testified regarding the programs offered at Pine Grove and stated that Pine Grove "handles all youthful offenders throughout the state" and is "designated as the facility for youthful offenders." *Id.* at 92.

Taylor presented the testimony of Dr. Nicole Machinski, an expert in the identification and treatment of juvenile sex offenders and in the certification of sex offenders. *Id.* at 9, 12. Dr. Machinski described Taylor's family background and his history of suffering neglect and abuse. *Id.* at 13-15. Dr. Machinski diagnosed Taylor "with adjustment disorder with mixed anxiety and depressed mood, as well as physical abuse of a child and sexual abuse of a child." *Id.* at 15. Dr. Machinski also testified regarding Taylor's criminal history and his previous experience and progress with therapy. *Id.* at 16-20. The doctor opined that Taylor would be amenable to treatment in the juvenile system. *Id.* at 27. She made this conclusion because he "had very little opportunity to benefit from any kind of treatment provided by the juvenile justice system thus far," he has shown he responds well to consistent treatment, and he expressed a willingness to participate in treatment. *Id.* at 27.

On cross-examination, Dr. Machinski stated that she based her testimony on her interviews with Taylor, Taylor's counsel, and the Department of Human Services ("DHS") worker, and on her review of Taylor's DHS file. *Id.* at 31-32. The doctor admitted that Taylor had committed the sexual assaults six months after he had completed an intensive therapy program. *Id.* at 41-42. Dr. Machinski drew a distinction between Taylor's previous treatment and sex offender treatment. She noted that his prior treatment had focused on defiance and oppositional behavior, rather than inappropriate sexual behavior. *Id.* at 42. However, she agreed that a person who exhibits antisocial behavior, such as residential burglary, would be less amenable to treatment. *Id.* at 44-45.[1]

After the close of the evidence, the Commonwealth argued that certification was proper because Taylor had committed a series of forcible rapes starting when the victim was 11, which had a severe impact on the victim. The Commonwealth further argued that having a rapist in the community creates a danger to, and has a serious impact on, the community, and poses a threat to public safety. The prosecution also pointed out that the crimes were a series of violent, forcible rapes, and that Taylor was the most culpable, as he was the rapist. *See* N.T., 4/25/14, at 107-12.

_____

[1] Taylor also presented Alda Sales-Vinson, the caseworker from DHS who had been overseeing Taylor's case.

At the conclusion of the hearing, the juvenile court determined that Taylor should be tried as an adult and certified the case to the criminal division. The court stated that it had considered the statutory factors and agreed with the Commonwealth's reasoning, including the reasoning for the impact of the offense on the victim, the impact of the offense on the community, the threat to the safety of the public, the nature and circumstances of the offense, and the degree of culpability. *Id.* at 115.

The court also discussed the factors addressing the adequacy and duration of treatment and amenability of Taylor to treatment, which were the factors addressed by the experts at the hearing. The juvenile court noted that the defense expert was inconsistent in her attempt to distinguish the prior treatment from treatment for sexual offenders, noting that the expert argued that the court should not find Taylor not amenable to treatment based on his prior treatment because the prior treatment did not address sexual abuse and, therefore, the treatments could not be compared, but also argued that Taylor is amenable to sexual offender treatment because he did well in prior treatments. *Id.* at 112-13. The court further noted that Taylor "had an unfortunate upbringing, through no fault of his own," and "[t]o a certain extent he is antisocial and damaged," but pointed out that the case involved a "predatory damaging act that occurred repeatedly over a 1-year period of time." *Id.* at 113, 114. It also observed with concern that Taylor would not admit he committed the sex offenses and stated that his failure to do so posed an impediment to effective sex-offender treatment:

> If you're going to go on the sex offenders' treatment, it's important that you admit, No. 1; examine your triggers, No. 2; talk about how you can avoid your triggers; and identify the depth of the problem. And here, we can't identify the depth of the problem largely because we're not admitting yet that there is a problem.

*Id.* at 113-14. The court noted that Taylor's time in the juvenile system was running out and "if he doesn't make sufficient progress, he's 21, he's back on the streets, and he's released from the jurisdiction of the Court with no supervision at all." *Id.* at 114-15.

The court concluded that Taylor was not amenable to juvenile treatment and granted certification:

> And when Dr. Machinski in her report indicates the issues that he needs treatment in and the Commonwealth argues, well, none of this has to do with amenability within the statute, well, it might, when you have four other categories. It would certainly refer to amenability for a crime that's much less serious than this. But I don't know that it means anything with regard to somebody who's committed the type of act that he's alleged to have committed.
>
> So for all the reasons in the statue as enumerated by Mr. Antonacio and because it's defense burden of proof, I'm going to grant the Commonwealth's motion to certify him to adult court. Thank you.

*Id.* at 115.

Following the transfer, the trial court conducted a jury trial. During Foster Mother's trial testimony, she stated that she became alarmed one day when she discovered Taylor and A.O. in the bathroom and she smelled semen. N.T. Trial, 6/20/16 at 92-93, 94. She said that she knew the smell of semen because she was "a correction officer for the Philadelphia Prison for over ten

years. And . . . if I'm there by the shower area, you could smell that smell coming out the shower area where men would be in there I guess, you know, doing whatever, having sex or whatever, or masturbation. . . ." *Id.* at 94. Taylor did not object.

Foster Mother subsequently testified that Taylor would bring A.O. snacks and that she confronted Taylor, saying, "I worked in the prison for over ten years and this is what inmates do -- [.]" *Id.* at 97. Defense counsel objected. The trial court sustained the objection and, after an off-the-record discussion, gave a cautionary instruction to the jury: "[A] few minutes ago the witness referred to, she used words to the effect that that's what inmates do. That was in no way a reference in any way, shape or form to this particular defendant. She's referring back to some of her experience as a prison guard." *Id.* at 109.

Following Foster Mother's testimony, defense counsel moved for a mistrial, citing Foster Mother's comments about inmates' behavior, stating he was making the motion "as we discussed earlier at sidebar." *Id.* at 133. The trial court denied the motion.

A.O. also testified at trial, and following direct examination, Taylor's counsel informed the court that A.O. had received a psychiatric examination in 2011, prior to moving to Foster Mother's home, which disclosed that he had had problems controlling his bowels. *Id.* at 42. Counsel sought permission to ask A.O. whether "that, in fact, happened, and depending on his answer [he] would call the doctor to elicit that information." *Id.* Counsel noted that A.O.'s

- 7 -

attorney had moved to quash the subpoena sent to the psychiatrist, and admitted that he was not asserting any exception to the psychiatrist-patient privilege. *Id.* at 43. The trial court refused to allow the questioning of A.O, or to require the psychiatrist to testify.

The jury found Taylor guilty of numerous crimes: rape of a child; rape by forcible compulsion; rape by threat of forcible compulsion; three counts each of involuntary deviant sexual intercourse by forcible compulsion, involuntary deviant sexual intercourse by threat of forcible compulsion, and involuntary deviate sexual intercourse with a child; four counts of sexual assault; two counts of indecent assault by forcible compulsion; and indecent assault of a person less than thirteen years of age.[2] On January 31, 2017, Taylor was sentenced to an aggregate term of ten to 25 years' incarceration, followed by ten years' probation. Taylor filed a timely notice of appeal.

Taylor presents the following issues on appeal:

> 1. Whether the trial court erred in certifying [Taylor] to be tried as an adult.
>
> 2. Whether the trial court erroneously denied [Taylor]'s mistrial motion.
>
> 3. Whether the trial court erred in preventing [Taylor] from introducing evidence indicating that [A.O.] had bowel control problems before he ever met [Taylor].

_____

[2] 18 Pa.C.S.A. §§ 3121(c), (a)(1), (a)(2); 3123(a)(1), (a)(2), (b); 3124.1; and 3126(a)(2) and (a)(7), respectively.

- 8 -

Taylor's Br. at 10.[3]

## I.      Certification Hearing

Taylor first claims the juvenile court erred in certifying him to be tried as an adult. Taylor's main argument on appeal is that the court violated his Fifth Amendment right against compulsory self-incrimination because it based its certification decision on the fact that Taylor had not admitted to the crimes. Taylor also argues that the juvenile court erred in accepting the testimony of the Commonwealth's expert that Taylor would not be amenable to treatment, rather than the defense expert testimony that he was amenable to treatment. He further argues that he is incarcerated at SCI Benner, not SCI Pine Grove, even though the testimony at the certification hearing addressed the programs for juvenile defendants at Pine Grove.

Taylor first claims the trial court erred in certifying him to be tried as an adult. We review a trial court's decision of whether to certify a minor to stand

---

[3] The documents from the juvenile case file associated with Taylor's case, including the transcript of the certification hearing, were not initially included in the certified record. As we require a complete record to decide the issues, and may not consider documents not included in the certified record, **see Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa.Super. 2006) (*en banc*), we ordered the trial court to supplement the record with the requisite portions of the juvenile case file. The court did so, and we received the supplemental record on March 28, 2018. We caution that it is an appellant's duty to ensure that the certified record is complete, and that any claims that may not be resolved due to missing documents, such as transcripts, may be deemed waived. **See id.**; **see also Commonwealth v. B.D.G.,** 959 A.2d 362, 373 (Pa.Super. 2008) (*en banc*) (claim waived where certified record lacked documents and exhibits necessary to resolve claim, and where those documents and exhibits were not included on the Pa.R.A.P. 1931(d) list of record documents served on counsel).

trial as an adult for an abuse of discretion. ***In re E.F.***, 995 A.2d 326, 329 (Pa. 2010). "The existence of facts in the record that would support a contrary result does not demonstrate an abuse of discretion." ***Id.*** Rather, we will find an abuse of discretion only where "the court rendering the adult certification decision . . . misapplied the law, exercised unreasonable judgment, or based its decision on ill will, bias, or prejudice." ***Id.*** (***Commonwealth v. Jackson***, 722 A.2d 1030, 1034 (Pa. 1999)).

Pursuant to the Juvenile Act, a court may transfer to criminal court a case involving a juvenile defendant who is 14 or more years of age if there is a *prima facie* case that the child committed the delinquent act alleged, the delinquent act would be considered a felony if committed by an adult, and there are reasonable grounds to believe that the public interest would be served by the transfer. 42 Pa.C.S.A. § 6355(a)(4)(i)–(iii).[4] In determining whether certifying a juvenile as an adult can serve the public interest, courts must consider the following factors:

> (A) the impact of the offense on the victim or victims;
>
> (B) the impact of the offense on the community;
>
> (C) the threat to the safety of the public or any individual posed by the child;
>
> (D) the nature and circumstances of the offense allegedly committed by the child;

---

[4] The parties do not dispute that Taylor was 15 at the time of the crimes, that there was a *prima facie* case that Taylor committed the acts, or that the delinquent acts would be considered felonies if committed by an adult.

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

    (I) age;

    (II) mental capacity;

    (III) maturity;

    (IV) the degree of criminal sophistication exhibited by the child;

    (V) previous records, if any;

    (VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

    (VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

    (VIII) probation or institutional reports, if any;

    (IX) any other relevant factors. . . .

42 Pa.C.S.A. § 6355(a)(4)(iii)(A)-(G).

In most cases, the Juvenile Act places the burden on the Commonwealth to prove by a preponderance of evidence that transfer would be in the public interest. 42 Pa.C.S.A. § 6355(g). However, the burden shifts to the defense to establish that that transfer would not serve the public interest if the juvenile was at least 15 years old at the time of the offense; was previously adjudicated delinquent of a crime that would be considered a felony if committed by an adult; and there is a *prima facie* case that the child committed an act that

would be classified as, among other things, rape or involuntary deviate sexual intercourse. 42 Pa.C.S.A. § 6355(g)(1)(ii), (2). Here, because Taylor was 15 at the time of the alleged crimes, had a prior adjudication for burglary, and there was a *prima facie* case that he had committed rape, the defense bore the burden of proving that transfer was not proper.

Taylor's main argument on appeal is that the trial court violated his Fifth Amendment right against compulsory self-incrimination because it based its certification decision on the fact that Taylor had not admitted to the crimes. Although Taylor did not raise this claim in his Rule 1925(b) statement, he did not waive it. Whether certification is proper is a question of jurisdiction, which cannot be waived. **Commonwealth v. Johnson**, 669 A.2d 315 (Pa. 1995) ("[T]he decision to transfer a case between the juvenile and criminal divisions is jurisdictional"); **Commonwealth v. McGinnis**, 675 A.2d 1282, 1284 (Pa.Super. 1996) (stating issue of certification of juvenile to stand trial as adult is jurisdictional and cannot be waived).

In **Commonwealth v. Brown**, 26 A.3d 485 (Pa.Super. 2011), we held that the Fifth Amendment right against compulsory self-incrimination is applicable to decertification[5] proceedings. **Id.** at 495. We further concluded that the trial court had violated the defendant's Fifth Amendment rights when

---

[5] The Juvenile Act excludes certain crimes, such as murder, from the definition of "delinquent act." 42 Pa.C.S.A. § 6302. Therefore, a case charging juvenile with murder, as was the case in **Brown**, is brought before the criminal division. 26 A.3d at 492. The juvenile can then request treatment within the juvenile system by petitioning the trial court to decertify the case and transfer the proceedings to juvenile court. **Id.**

applying the Section 6355 factors. *Id.* at 498. There, the trial court relied on expert testimony that the defendant could not be rehabilitated unless he took responsibility for his actions, which he had not done, and concluded that the defendant would not be amenable to treatment in the juvenile system. *Id.* at 498.

Here, in stating its reasons, the juvenile court referenced Taylor's failure to admit guilt and that admission was a step in sex offender treatment. This was error. *Id.* at 495. However, in our review of an order granting certification, we do not focus on one aspect of the record alone. Rather, we examine the record as whole to determine whether the ultimate decision of granting certification was an abuse of discretion. *McGinnis*, 675 A.2d at 1286 (citing *Commonwealth v. McDonald*, 582 A.2d 328, 335 (Pa.Super. 1990)). We presume that the juvenile court properly considered and weighed the relevant information before it. *Id.* (citing *McDonald*, 582 A.2d at 333). *See also Commonwealth v. Devers*, 546 A.2d 12 (Pa. 1988). "[A]n appellate court may not require detailed or intricate explanations of the rationale for certification when a detailed juvenile file and arguments of counsel have been presented for consideration." *McDonald*, 582 A.2d at 333–34.

On this record, we find the juvenile court did not abuse its discretion in finding Taylor failed to carry his burden to establish that certification was not proper. In rendering its decision, the court cited the seriousness of the alleged crime, the time remaining in the court's jurisdiction, and the failure of Taylor's previous treatment to prevent the alleged crimes. We conclude that, although

the juvenile court stated an impermissible consideration, based on all evidence presented at the hearing, and the totality of the reasoning provided by the juvenile court, the juvenile court did not abuse its discretion.

To the extent Taylor argues that the trial court erred in accepting the testimony of the Commonwealth's expert that Taylor would not be amenable to treatment, rather than the defense expert testimony that he would be amenable, we find this claim to be meritless. The trial court did not abuse it discretion in weighing the expert testimony, finding the defense expert testimony inconsistent, and accepting the testimony of the Commonwealth witness that Taylor would not be amenable to treatment.

Further, Taylor claims that he is incarcerated at SCI Benner, not SCI Pine Grove, and notes that the testimony at the certification hearing addressed the programs for juvenile defendants at Pine Grove. We conclude that this claim is meritless. We review a trial court's certification decision based on the circumstances as they existed at the time of the hearing. Information regarding Taylor's present place of incarceration was not before the court at the time of the certification hearing (indeed, he had not been convicted or sentenced). Therefore, based on the information the juvenile court had before it, we conclude the court did not abuse it discretion.

## II. Motion for Mistrial

Taylor next agues the trial court erred in denying his motion for a mistrial following Foster Mother's testimony regarding her experience as a corrections officer.

We review a trial court's decision to grant or deny a motion for a mistrial for an abuse of discretion. ***Commonwealth v. Rega***, 933 A.2d 997, 1016 (Pa. 2007) (quoting ***Commonwealth v. Simpson***, 754 A.2d 1264, 1272 (Pa. 2000)). A trial court should grant a mistrial only where "the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." ***Id.*** (quoting ***Simpson***, 754 A.2d at 1272).

However, a trial court need not grant a mistrial "where cautionary instructions are adequate to overcome any possible prejudice." ***Id.*** (quoting ***Simpson***, 754 A.2d at 1272). "[C]ourts must consider all surrounding circumstances before deciding that curative instructions were insufficient and the extreme remedy of mistrial is required." ***Commonwealth v. Manley***, 985 A.2d 256, 266 (Pa.Super. 2009) (quoting ***Commonwealth v. Bracey***, 831 A.2d 678, 682-83 (Pa.Super. 2003)). The circumstances courts must consider include "whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed, whether the Commonwealth exploited the reference, and whether the curative instruction was appropriate." ***Id.*** (quoting ***Bracey***, 831 A.2d at 682-83). In addition, "the law presumes that the jury will follow the instructions of the court." ***Commonwealth v. Brown***, 786 A.2d 961, 971 (Pa. 2001) (citations omitted).

The trial court and Commonwealth claim that Taylor waived this claim because he failed to seek a motion for a mistrial at the time of the testimony.

Taylor did not object following Foster Mother's testimony that she knew the smell of semen from her work as a correction officer and did not seek a mistrial based on this testimony. We therefore agree that Taylor waived this claim. *See* Pa.R.A.P. 302(a) (stating issues not raised in lower court are waived and cannot be raised for first time on appeal).

However, we decline to conclude he waived the separate claim that the trial court erred in denying his motion for a mistrial based on Foster Mother's testimony regarding inmates providing snacks. Taylor objected to Foster Mother's testimony regarding the snacks, the trial court sustained the objection, and a sidebar occurred off the record. After the conclusion of her testimony, counsel stated that "[a]s discussed earlier at sidebar," he was requesting a mistrial, focusing the request on the testimony regarding snacks. Neither the Commonwealth nor the trial court indicated they were unaware of a prior motion for a mistrial. Therefore, Taylor has not waived this claim.

Nonetheless, we disagree that the trial court erred in denying the motion for a mistrial. The trial court provided a cautionary instruction following the testimony, ensuring the jury was aware that Foster Mother's testimony was not referring to Taylor, but rather to her prior experience as a corrections officer. That was sufficient to dispel any confusion and we presume the jury followed the court's instructions. *Brown*, 786 A.2d at 971. In addition, although the remark was responsive to a question posed by the Commonwealth, the trial court sustained counsel's objection, the Commonwealth did not exploit the reference, and the instruction was

appropriate to remedy the allegedly improper testimony. *See Manley*, 985 A.2d at 266. We conclude the trial court did not abuse its discretion in denying the motion for a mistrial.[6]

## III. Evidentiary Ruling

Taylor next argues that the trial court erred when it ruled he could not present the testimony of the psychiatrist who examined A.O. in 2011. He claims that a psychiatric report stated that A.O. had trouble controlling his bowels before he entered the foster home.

We review a trial court's evidentiary rulings for an abuse of discretion. ***Commonwealth v. Nypaver***, 69 A.3d 708, 716 (Pa.Super. 2013). An abuse of discretion occurs "where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Id.*

In Pennsylvania, the psychiatrist-patient privileges provides that:

> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

---

[6] To the extent Taylor claims Foster Mother's testimony regarding her religious beliefs about homosexuality prejudiced the jury, which does not appear to have been the basis of the motion for a mistrial, we agree with the trial court that there is no evidence of prejudice to the jury. 1925(a) Op. at 16-17.

42 Pa.C.S.A. § 5944.

At trial, Taylor's attorney alleged there was a psychiatric report from 2011 disclosing that A.O. had trouble controlling his bowels prior to entering the foster home. Taylor requested permission to ask A.O. whether that was true and to present the psychiatrist as a witness. N.T., 6/20/16, 42-44. A.O.'s attorney had moved to quash the subpoena under Section 5944, and Taylor did not assert any exception to the privilege.

Because the report contained privileged information, and Taylor did not establish any exception to the privilege, we conclude the trial court did not abuse its discretion in excluding the evidence.

On appeal, Taylor also claims the preclusion of the evidence violated his constitutional right to confront witnesses against him. Taylor waived this claim because he did not raise it before the trial court. Pa.R.A.P. 302(a); *Commonwealth v. Butler*, 812 A.2d 631, 633 (Pa. 2002).

Judgment of sentence affirmed.

Judge Musmanno joins the memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/18