669 A.2d 315

COMMONWEALTH of Pennsylvania, Appellant,

v.

Stephon JOHNSON, Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 19, 1995.

Decided Dec. 27, 1995.

570

Jenifer Shirey, Erie, for the Commonwealth.

John M. Bonanti, Erie, for Appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

This is an appeal from the Opinion and Order of the Superior Court of Pennsylvania (*en banc*), affirming the Order of the Court of Common Pleas of Erie County, Juvenile Division. While we disagree with the reasoning set forth by the Superior Court, we nevertheless affirm the result.

On October 28, 1991, Appellee Stephon Johnson was charged with the crimes of Criminal Homicide,[1] Criminal Conspiracy (to commit robbery),[2] Robbery,[3] Theft by Unlawful Taking,[4] and Receiving Stolen Property[5] for his involvement in an incident on October 18, 1991, which resulted in the death of Richard Stevens, an Erie cab driver.

The record reveals that on October 18, 1991, Johnson and his co-defendants had a friend call for a cab. Intending to rob

1. 18 Pa.C.S. § 2501.
2. 18 Pa.C.S. § 903.
3. 18 Pa.C.S. § 3701.
4. 18 Pa.C.S. § 3921.
5. 18 Pa.C.S. § 3925.

the cab driver, they directed the driver to a dark and deserted place. Eventually, one of Johnson's co-defendants, Ricardo Noble, shot the cab driver in the head. They all ran from the scene, with Johnson grabbing a clipboard and a satchel from the cab.

Johnson was only sixteen (16) years old at the time of the incident, but pursuant to 42 Pa.C.S. § 6355(e),[6] he was charged as an adult. Johnson filed a petition under 42 Pa.C.S. § 6322,[7] requesting that his case be transferred to the juvenile division. This petition was granted, and Johnson was adjudicated delinquent. The Commonwealth appealed, questioning the propriety of the order transferring the case to the juvenile division.

This case presents several important questions for our review. The first is whether an order transferring a murder case from the Criminal Division of the Court of Common Pleas to the Juvenile Division of the Court of Common Pleas, pursuant to section 6322 of the Juvenile Act, 42 Pa.C.S. § 6301, *et. seq.*, is an interlocutory order that cannot be appealed until a final disposition of the case has been made. The second issue deals with whether the appeal of an order

6. This provision states:

§ 6355. Transfer to criminal proceedings

(e) Murder.—Where the petition alleges conduct which if proven would constitute murder, the court shall require the offense to be prosecuted under the criminal law and procedures, except where the case has been transferred pursuant to section 6322 (relating to transfer from criminal proceedings) from the division or a judge of the court assigned to conduct criminal proceedings.

7. This section provides in relevant part:

§ 6322. Transfer from criminal proceedings

(a) General rule.—Except as provided in 75 Pa.C.S. § 6303 ... if it appears to the court in a criminal proceeding other than murder, that the defendant is a child, this chapter shall immediately become applicable, and the court shall forthwith halt further criminal proceedings, and, where appropriate, transfer the case to the division or a judge of the court assigned to conduct juvenile hearings, together with a copy of the accusatory pleading and other papers, documents, and transcripts of testimony relating to the case. If it appears to the court in a criminal proceeding charging murder, that the defendant is a child, the case may similarly be transferred and the provisions of this chapter applied.

transferring a murder case from the criminal division to the juvenile division, pursuant to section 6322, taken after the disposition of the case by the juvenile division, is barred by the double jeopardy protections of the United States and Pennsylvania Constitutions. Finally, assuming the appeal is timely and criminal prosecution is not barred, we must determine whether the lower court committed gross abuse of discretion by transferring Johnson's case to the juvenile division.

In support of its contention that the appeal is timely, the Commonwealth relying on section 6355(f) [8] of the Juvenile Act, asserts that all transfer orders are interlocutory; therefore, it was required to wait until Johnson's adjudication and disposition was final, before it could appeal the transfer order.

Section 6355(f) only expressly governs transfers from the juvenile division to the criminal division. The Commonwealth argues that we can infer that the legislature intended to treat all transfers between the two divisions in the same way. However, this argument ignores the practical difference between the two situations. Overwhelmingly, a challenge to an order transferring a case from the juvenile division to the criminal division will be made by the juvenile. Therefore, by asserting the challenge, the juvenile impliedly waives his claim to relief under the double jeopardy clause. *Forman v. United States,* 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960), *reh'g denied,* 362 U.S. 937, 80 S.Ct. 749, 4 L.Ed.2d 751 *overruled on other grounds, United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). On the other hand, a challenge to an order transferring a case from the criminal division to the juvenile division will generally be asserted by the Commonwealth. As such, there is no waiver by the juvenile of his right to be free from double jeopardy.

8. This section provides, in relevant part:
 § 6355. Transfer to criminal proceedings
 (f) Transfer action interlocutory.—The decision of the court to transfer or not to transfer the case shall be interlocutory.

■ In *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), the Supreme Court of the United States established that the double jeopardy doctrine precludes criminal prosecution, following an adjudication of delinquency by a juvenile court. *Id.* However, this principle is premised on the assumption that the adjudicatory hearing was properly convened and the court was acting within its jurisdiction. 18 Pa.C.S. § 112. *See also Commonwealth v. Keenan,* 365 Pa.Super. 437, 530 A.2d 90 (1987) (reprosecution on same charges in court with jurisdiction not barred by double jeopardy, following setting aside of guilty verdict and ordering of new trial for lack of subject matter jurisdiction in original court). Accordingly, if a transfer to the juvenile division is proper, then jurisdiction would vest with the juvenile division, jeopardy would attach at the initiation of the adjudicatory hearing, and subsequent criminal prosecution would be barred. A problem arises, however, when the transfer is improper. In those instances, the case should have remained in the criminal division and no action should have been taken by the juvenile division. This raises the questions of whether jurisdiction ever vested with the juvenile division and whether jeopardy attached with the adjudication by that division.

In *Commonwealth v. Greiner,* 479 Pa. 364, 388 A.2d 698 (1978), this Court dealt with the propriety of a transfer from the juvenile division to the criminal division. We concluded that the transfer was improper and that the criminal division had acted without authority to convict and sentence the juvenile. Accordingly, we vacated the sentence and remanded the case for disposition by the juvenile division.[9] This Court has

9. There was no evidence that the Commonwealth attempted to relitigate the case in the juvenile division. However, as stated earlier, a subsequent adjudicatory hearing would not have been barred, as the juvenile impliedly waived his claim to double jeopardy protection when he challenged the original conviction.

Although a subsequent hearing would be permissible, such a hearing would seem to be unnecessary, as the criminal proceedings would have been more than sufficient to establish delinquency. It should be noted that the converse would not hold true. A juvenile adjudicatory hearing would not satisfy the standards required in a criminal proceeding;

not, however, dealt with an appeal challenging the propriety of a transfer from the criminal division to the juvenile division and the repercussions that flow therefrom.

 In this case, the Superior Court found that section 952 of the Judicial Code, 42 Pa.C.S. § 952, which provides:

> The divisions of a court of common pleas are administrative units composed of those judges of the court responsible for the transaction of specified classes of business of the court. In a court of common pleas having two or more divisions each division of the court is vested with the full jurisdiction of the whole court, but the business of the court may be allocated among the divisions of the court by or pursuant to general rules.

controlled the jurisdictional issue. *Id.* The court interpreted this provision to mean that no division has separate or exclusive subject matter jurisdiction, rather every division has jurisdiction to hear any matter that could be brought in the court of common pleas.

To support its interpretation, the Superior Court cites *Commonwealth v. Wadzinski*, 485 Pa. 247, 401 A.2d 1129 (1978), *on remand*, 266 Pa.Super. 56, 403 A.2d 91 (1979), reversed on other grounds, 492 Pa. 35, 422 A.2d 124 (1980). However, this case is more appropriately cited for its resolution of a procedural flaw. *Id.* 485 Pa. at 255, 401 A.2d at 1133. Here, the appellant erroneously filed a petition for a writ of certiorari to the court of common pleas. *Id.* at 251, 401 A.2d at 1130. The proper procedure would have been to file a petition for a general appeal and a hearing *de novo*. *Id.* Before the restructuring of the court of common pleas, this latter appeal could only be heard by the Court of Quarter Sessions. As that court was abolished with the restructuring, a general appeal would now be heard by the court of common pleas. Therefore, the court was not confronted with a true conflict between jurisdiction of two divisions of the court of common pleas, rather it was simply required to determine what scope

therefore, the juvenile would have to be retried, applying the more stringent rules of criminal procedure.

of review to apply. As the court recognized that the problem was merely a procedural flaw in the filing of the petition, it treated the case as though appellant properly filed for a general appeal. *Id.* at 255, 401 A.2d at 1133.

The Superior Court also cites *Guerin v. Guerin*, 296 Pa.Super. 400, 442 A.2d 1112 (1982), which stated that since each division of a court of common pleas is vested with the full jurisdiction of the whole court, any division would have jurisdiction over the action at issue, regardless of whether it was the division to which this type of case had been administratively assigned. *Id.* at 404 n. 3, 442 A.2d at 1113–14 n. 3. However, this statement by the court is merely dicta, as the case did not question the jurisdiction of the lower court that dismissed the complaint.

Finally, the Superior Court cites *Hollman v. Hollman*, 347 Pa.Super. 289, 500 A.2d 837 (1985), for the proposition that the question of which division of the court of common pleas is the proper forum for commencing an action is not one of jurisdiction, but of internal common pleas court administration. *Id.* at 319, 500 A.2d at 852. The basis for the decision in *Hollman* can be traced to *Posner v. Sheridan*, 451 Pa. 51, 299 A.2d 309 (1973). The court appears to treat a statement made in the opening paragraph of the *Posner* opinion as part of this Court's holding. In this paragraph, this Court stated that "[t]he question that this case presents is not one of jurisdiction but of internal common pleas court administration." *Id.* at 55, 299 A.2d at 311. However, reliance on *Posner* for this proposition seems to ignore the fact that this Court ultimately vacated the decree, stating that "the issue was **improperly entertained** in the family court division, and, more importantly, that court's decree was incorrect as a matter of law." *Id.* at 57, 299 A.2d at 312 (emphasis added). Moreover, this court went on to note that the case at bar fell within the **jurisdiction** of the civil division. *Id.* at 59 n. 7, 299 A.2d at 313 n. 7 (emphasis added).

If we were to follow the Superior Court's interpretation, we could encounter some rather absurd results. For example, an adult erroneously believed to be a juvenile could have his case

heard by the juvenile division. Obviously, the court would follow its own procedures and minimal set of rules. It would make its final determination and dispose of the case using the limited methods of rehabilitation available. This adjudication would, nonetheless, be binding and would preclude proper prosecution in the criminal division, due to the double jeopardy protections.

In light of this Court's actual holding in *Posner* and the practical differences between the juvenile and criminal divisions, a more reasonable reading of section 952 would give every division of the court of common pleas the jurisdiction to transfer any case properly heard in the court of common pleas to the proper division having subject matter jurisdiction over that particular matter. This would also take into account the fact that the power and authority of the court of common pleas is defined and limited by legislation.[10] Clearly, the Juvenile Act is the type of legislation which exemplifies the legislature's desire to vest limited and exclusive jurisdiction in one division of the court of common pleas, in order to meet the special needs of our youth.

■ This Court has on prior occasions found that the decision to transfer a case between the juvenile and criminal divisions is jurisdictional. *Commonwealth v. Moyer*, 497 Pa. 643, 646, 444 A.2d 101, 102 (1982) (issue of certification is jurisdictional); *Commonwealth v. Greiner*, 479 Pa. 364, 372, 388 A.2d 698, 702 (1978) (criminal court acted without authority in trying appellant as an adult); *see also Commonwealth v. Leatherbury*, 390 Pa.Super. 558, 560, 568 A.2d 1313, 1315 (1990) (motion to transfer criminal proceedings to juvenile court presents jurisdictional issues); *Commonwealth v. Zoller*, 345 Pa.Super. 350, 353, 498 A.2d 436, 438 (1985) (motion for transfer was a jurisdictional issue).

10. Article V, Section 5 of the Constitution of Pennsylvania provides:
 There shall be one court of common pleas for each judicial district (a) having such divisions and such number of judges as shall be provided by law, one of whom shall be president judge; and (b) having original unlimited jurisdiction in all cases **except as may be provided by law.**
PA CONST art. V, § 5 (emphasis added).

578

However, the Superior Court interprets footnote 4 in *Commonwealth v. Pyle*, 462 Pa. 613, 342 A.2d 101 (1975),[11] to mean that the propriety of the transfer orders in these cases actually raises "a 'non-jurisdictional' question which would ordinarily have been waived by the defendant's guilty plea, but which was instead not waived because of 'unusual circumstances.' " *Commonwealth v. Johnson*, 435 Pa.Super. 132, 148, 645 A.2d 234, 243 (1994).

This interpretation, however, does not comport with this Court's use of the term "jurisdictional" throughout the remainder of the *Pyle* opinion. Moreover, our subsequent opinion in *Moyer*, citing *Pyle*, which expressly stated that the issue of certification is jurisdictional and, therefore, not waivable, supports an alternative interpretation.

Furthermore, this Court has made the distinction between jurisdictional and non-jurisdictional non-waivable issues. For example, the issue of the legality of a sentence clearly is not jurisdictional, but it is not waivable. *Commonwealth v. Padden*, 335 Pa.Super. 51, 54, 483 A.2d 950, 951 (1984). If the Superior Court's interpretation of the issue in this case is correct, there would not have been any need to make this distinction. All the non-waivable issues would simply be either "jurisdictional" or "non-waivable."

We find that the term "jurisdictional," when used in this context, is best defined by its plain meaning—"the power, right, or authority to interpret and apply the law" or "the limits or territory within which authority may be exercised." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 655 (1986). This definition is supported by our holding in *Greiner*, where we found that the criminal division was without the **authority**

11. In footnote 4, this Court stated:

Absent unusual circumstances, a guilty plea constitutes a waiver of any non-jurisdictional defects or defenses. However, since one of the prime purposes of the Juvenile Act is to spare from adult punishment certain youths whose behavior would necessarily render them *guilty* of adult crimes (including in some instances, the crime of murder) and since the decision to, or not to transfer is interlocutory—11 P.S. 50–325(f)—and thus only appealable after sentencing.

*Id.* 462 Pa. at 617 n. 4, 342 A.2d at 103 n. 4 (citations omitted).

to try and sentence the juvenile and vacated the sentence. 479 Pa. at 372, 388 A.2d at 702 (emphasis added). Accordingly, we find that the transfer order in question is jurisdictional in every sense of the term. Hence, if the challenged order is improper, jurisdiction does not vest with the receiving court. If jurisdiction does not vest with the court, then jeopardy likewise does not attach.

Consequently, we must turn to the propriety of the transfer order at issue in this case, in order to make a final determination as to the proper disposition of this case.

Section 6322 of the Juvenile Act clearly establishes that, in general, the prosecution of juveniles charged with criminal offenses is within the exclusive jurisdiction of the juvenile division. 42 Pa.C.S. § 6322. However, when the juvenile is charged with murder, jurisdiction remains with the criminal division, subject to the possibility of transfer to the juvenile division. *Id. See Pyle*, 462 Pa. at 622 n. 12, 342 A.2d at 106 n. 11 (1975) (In cases of delinquency, the juvenile court is given exclusive jurisdiction in the first instance. In cases of murder, however, jurisdiction is originally in criminal court.).

■ When a juvenile seeks to have his case transferred from the criminal division to the juvenile division, he must show that he is in need of and amenable to treatment, supervision or rehabilitation in the juvenile system. *Id.* at 622–23, 342 A.2d at 106. If the evidence presented fails to establish that the youth would benefit from the special features and programs of the juvenile system and there is no special reason for sparing the youth from adult prosecution, the petition must be denied and jurisdiction remains with the criminal division. *Id.* at 623, 342 A.2d at 107.

■ The legislature was silent as to what a court should consider, when reviewing a motion for transfer from the criminal division to the juvenile division. However, criteria relevant to this determination can be found in 42 Pa.C.S. § 6355(a)(4)(iii)(A), governing transfers from the juvenile division to the criminal division. These factors include the juvenile's age; mental capacity; maturity; degree of criminal

sophistication; previous record; nature and extent of any prior delinquent history; whether the child can be rehabilitated prior to expiration of Juvenile Court jurisdiction; probation or institutional reports; nature and circumstances of the acts for which the transfer is sought; and any other relevant factors. 42 Pa.C.S. § 6355(a)(4)(iii)(A).

It is clear from the language of the act that a transfer in a murder case is not a matter of right, and the determination of whether the interests of the state and society require prosecution as an adult is within the sound discretion of the trial court. *Commonwealth v. Zoller*, 345 Pa.Super. 350, 355, 498 A.2d 436, 439 (1985). Moreover, "[s]uch abuse may not merely be an error of judgment, but must be a misapplication of the law or an exercise of manifestly unreasonable judgment based on partiality, prejudice or ill will." *Commonwealth v. Romeri*, 314 Pa.Super. 279, 291, 460 A.2d 1139, 1145 (1983), *aff'd*, 504 Pa. 124, 470 A.2d 498 (1983).

In this case, the trial court reviewed the preliminary hearing transcript and approximately six statements given by the defendant to the police. These documents revealed that Johnson turned himself in to the police and cooperated with them to the extent of giving numerous statements and testified at the preliminary hearing.

The trial court also noted that little or no evidence was presented to indicate that Johnson would be found guilty of first degree murder, thereby subjecting him to a possible death penalty. In fact, most, if not all, of the evidence presented indicated that Johnson would not be guilty of murder in the first degree.

Additionally, the trial court accepted the testimony, findings, conclusions, diagnosis and treatment recommendations of Russell Barton, M.D.[12] Dr. Barton testified that he reviewed various documents and conducted extensive interviews with Johnson's family, friends, ministers, etc., and Johnson himself.

12. Dr. Barton was Johnson's expert medical witness. The court found that Dr. Barton had extensive education, training and experience in the areas of medicine and psychiatry and is Board Certified in psychiatry.

He also administered a battery of psychological and intelligence tests. He concluded that Johnson had a mild identity disorder, which resulted in poor self-image, a lack of self-confidence, and an inability to assert himself. Dr. Barton found that Johnson had a good sense of right and wrong and that he had a history of amenability to authority, particularly with those he liked, respected and with whom he had established a rapport. Dr. Barton concluded, to a reasonable degree of psychiatric certainty, that the most appropriate form of treatment for Johnson would simply be access to a good counseling system one to three times per week and that Johnson would clearly be amenable to such treatment within the juvenile system. He also concluded that Johnson would be rehabilitated within the three to three and one-half years that he would be under the supervision of the juvenile system.

The trial court also accepted the testimony of Robert Blakely, an assistant supervisor involving treatment plans in the juvenile system, who stated that such ordinary counseling exists within the juvenile system.

The court noted that Johnson has had a stable home life, done housework regularly for his mother, obeyed most of her stringent rules, babysat for neighbors, volunteered at the City Mission and actively participated in church activities. He has attended school regularly, with no unexcused absences over a five year period.

The trial court considered that Johnson was seventeen (sixteen at the time of the offense), and that even though he was the oldest of the three co-defendants, he was the least criminally sophisticated, still somewhat immature and was physically the shortest, smallest and weakest. Moreover, the court acknowledged that Johnson had no prior record of delinquency, had never been involved with the juvenile system, and was the first to turn himself in to the police shortly after the incident.

The court found that Johnson was non-aggressive and nowhere near mature enough, physically, mentally or emotionally, to cope with adult placement. More importantly, he could be successfully rehabilitated within the juvenile system.

582

Accordingly, the court found that Johnson met his burden of proving that he needs treatment in the juvenile system, that he is amenable to such treatment and that he can be rehabilitated with such treatment. Therefore, it granted Johnson's motion to transfer to the Juvenile Division.

■ Therefore, while we agree that the transfer order in question is interlocutory, we cannot agree that the Commonwealth must or should wait until final disposition by the juvenile division before seeking its appeal. Although, based on the analysis of this case, the double jeopardy clause would not have prevented prosecution in the criminal division had it been deemed proper, the resolution of the propriety of the transfer order does raise an important jurisdictional issue. Therefore, based on the rationale of the double jeopardy clause, we should endeavor to avoid unnecessarily placing an individual through the stress and burden of two separate proceedings for the same conduct. Accordingly, an appeal of an order transferring a case from the criminal division to the juvenile division is more appropriately aligned with cases falling under Pennsylvania Rule of Appellate Procedure 311(d).[13] Therefore, we hold that these orders are immediately appealable as of right.

As the court's explanation demonstrates that it fully considered the factors set forth in § 6355(a)(4)(iii)(A), we find that the trial court did not abuse its discretion when it transferred the case to the juvenile division. Accordingly, the adjudication and disposition of Johnson by the juvenile division must stand.

NIX, C.J., concurs in the result.

MONTEMURO, J., participates by designation as a senior judge as provided by Rule of Judicial Administration 701(f).

13. Pa.R.App.P. 311(d) provides:
**RULE 311. INTERLOCUTORY APPEALS AS OF RIGHT**
(d) **Commonwealth Appeals in Criminal Cases.** In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case but where the Commonwealth asserts that the order will terminate or substantially handicap the prosecution.