J-S35021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.G. | : | No. 1601 MDA 2023 |

Appeal from the Order Entered November 17, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000180-2023

BEFORE: PANELLA, P.J.E., MURRAY, J., and KING, J.

MEMORANDUM BY MURRAY, J.:        **FILED: OCTOBER 23, 2024**

The Commonwealth of Pennsylvania appeals from the order granting the petition for decertification filed by J.G. (Defendant), and transferring his case from criminal court to juvenile court pursuant to the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6375. Upon careful consideration, we affirm.

On November 1, 2022, when Defendant was 17 years and 4 months old, he and a co-conspirator committed an armed robbery at Asian Yummy, a restaurant located at 1500 N. George Street, York, Pennsylvania (the restaurant). *See* N.T., 12/29/22, at 5-9; N.T., 11/16-17/23, at 12, 14-17. Police subsequently apprehended Defendant and charged him, as an adult, with one count each of robbery, conspiracy to commit robbery, terroristic threats, theft by unlawful taking, receiving stolen property, simple assault,

recklessly endangering another person, and possession of a firearm as a minor.[1]

On December 29, 2022, the decertification court conducted an "interest of justice" evidentiary hearing. The Commonwealth presented testimony from, *inter alia*, Detective Isaiah Emenheiser (Detective Emenheiser), of the Northern York County Regional Police Department. Detective Emenheiser was the lead investigator assigned to the robbery. N.T., 12/29/22, at 5. Detective Emenheiser's investigation established Defendant and his co-conspirator, recorded by surveillance video at the restaurant, approached Lou Lou Han (Ms. Han), who was near the cash register. *Id.* at 5-6. Defendant brandished a handgun, pointed it at Ms. Han, and demanded money. *Id.* at 6-7. Ms. Han gave Defendant cash from the cash register, and Defendant and his co-conspirator fled. *Id.* at 8-9.

Detective Emenheiser's investigation led him to believe that the perpetrators may be associated with the George Street Program House (Program House), a juvenile diversion program/residential facility located in close proximity to the restaurant. *Id.* at 10. Detective Emenheiser showed the surveillance video to a Program House staff member, who identified the perpetrators as Defendant and his co-conspirator. *Id.* Detective Emenheiser subsequently executed a search warrant of Defendant's private bedroom

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903(a)(1), 2706(a)(1), 3921(a), 3925(a), 2701(a)(3), 2705, 6110.1(a).

inside the Program House. *Id.* at 11-12. Police found clothing in Defendant's bedroom that matched the clothing worn by one of the perpetrators during the robbery. *Id.* at 12-13.

At the conclusion of the interest of justice hearing, the decertification court concluded, "as we sit here today, [D]efendant is a juvenile." *Id.* at 60. The court ordered Defendant's transfer from the York County Prison to an appropriate juvenile facility, as soon as a bed became available. *See id.* at 60-62; *see also id.* at 60 (decertification court stating, "a placement in the community would be inappropriate at this time as it would pose some safety risks to both [Defendant] and the public generally.").

Defendant filed his petition for decertification[2] on January 19, 2023, asserting:

> [Defendant] has had minimal prior contact with the juvenile justice system in Pennsylvania, but he is not currently on juvenile probation supervision. [Defendant] has, however, an extensive history with the Lancaster County dependency court and remains an adjudicated dependent youth. It is believed that based on his age, mental capacity, maturity and criminal sophistication, [Defendant] is amenable to treatment, rehabilitation, and supervision under the Juvenile Act prior to the expiration of the

---

[2] Pursuant to Section 6322 of the Juvenile Act, when a juvenile has committed any of the offenses enumerated under paragraph (2)(ii) or (iii) of the definition of "delinquent act" set forth in 42 Pa.C.S.A. § 6302, the criminal division of the Court of Common Pleas is vested with jurisdiction. 42 Pa.C.S.A. § 6322(a); *see also id.* § 6355(e) (same). Robbery is an enumerated offense under Section 6302. *Id.* § 6302(2)(ii)(D). When a case proceeds directly to the criminal division, the juvenile has "the option of requesting treatment within the juvenile system[,]" through a transfer process of "decertification." *Commonwealth v. Aziz*, 724 A.2d 371, 373 (Pa. Super. 1999).

juvenile court's jurisdiction.[3]  Moreover, public interest requires that [Defendant] receive treatment and rehabilitative services, which are only available through the juvenile court.  It is averred that [Defendant] can establish by the preponderance of the evidence that his case should be transferred to juvenile court for treatment and rehabilitation.

Petition for Decertification, 1/19/23, ¶¶ 10-14 (paragraph numbering and breaks omitted; footnote added; some capitalization modified). Simultaneously with his petition for decertification, Defendant filed a petition for an "amenability assessment," to be prepared by the Juvenile Probation Office.  ***See generally*** Petition for Amenability Assessment, 1/19/23.

The decertification court detailed what next transpired in its Pa.R.A.P. 1925(a) opinion:

On January 23, 2023, [] Defendant filed a petition for [a] mental health evaluation.  A second interest of justice hearing was held on January 24, 2023, wherein [the decertification court ordered that] Defendant … be released forthwith to … Lancaster County Child and Youth Services[.  A]n amenability assessment of the Defendant was ordered.  [The c]harges were bound over to the Court of Common Pleas on January 26, 2023.

The Defendant was formally arraigned on February 6, 2023.  At the time of arraignment, both a psychological and psychosexual evaluation was ordered by [the decertification] court.  A transfer report was completed by Officer Lisa Rumsey [(Ms. Rumsey or Officer Rumsey),] of [the] York County Juvenile Probation [Office,] on March 2, 2023.  Status hearings were held in this case on April 18, June 7, August 2, September 27, and October 30, 2023.  At each status hearing, both the Commonwealth and Defen[dant] were awaiting the completion of psychological evaluations for the Defendant.  A decertification hearing was scheduled for November 16, 2023.

_____

[3] Juvenile court jurisdiction expires when a delinquent child "attains 21 years of age."  42 Pa.C.S.A. § 6352(a)(5).

- 4 -

Decertification Court Opinion, 1/16/24, at 2 (some capitalization modified).

Prior to the decertification hearing, both the Commonwealth and Defendant obtained experts in the fields of clinical/forensic psychology. The Commonwealth's expert was Dr. Frank Dattilio, Ph.D. (Dr. Dattilio). Defendant's expert was Stephen Timchack, Psy.D. (Dr. Timchack). Both Drs. Dattilio and Timchak prepared expert reports following their respective clinical interviews of Defendant and review of his records. *See* N.T., 11/16-17/23, Commonwealth Ex. 6, Defendant Ex. 2.

The decertification hearing took place on November 16 and 17, 2023. The Commonwealth first presented testimony from Detective Emenheiser to establish a *prima facie* showing that Defendant committed the armed robbery. *See* N.T., 11/16-17/23, at 10-33. The decertification court found that the Commonwealth had established a *prima facie* case. *Id.* at 42; *see also id.* (Defendant's counsel conceding, "given the low burden that *prima facie* is, I believe that Detective Emenheiser's testimony is sufficient.").

The Commonwealth thereafter presented victim impact testimony from the restaurant's co-owners, Ms. Han and her husband, Aady Lin (Mr. Lin). Ms. Han described her fear when Defendant pointed a gun at her face. *Id.* at 45. Ms. Han testified she remained fearful following the robbery and lost sleep. *Id.* at 46. Mr. Lin described the lasting fear that the robbery caused him and his staff. *Id.* at 52-53.

Notably, Defendant presented testimony from Willem Kiefer (Mr. Kiefer), the executive director of the Bench Mark program (the program or Bench Mark program), a fitness-based mentorship program in Lancaster. *Id.* at 60. Mr. Kiefer stated Defendant began participating in the program after the robbery, in February 2023. *Id.* at 64. Mr. Kiefer testified the program

> began as a fitness-based mentoring program that has since developed into an interconnected network of programs [that] begin by supporting youth when they are incarcerated at the Lancaster County Youth Intervention Center. We provide programming that gets them through the facets of juvenile probation. We provide community-based programming that extends beyond that time on probation. … And in the best case scenario[, the program] offer[s] part-time employment to the individuals who succeeded through that network of programs.

*Id.* at 61; *see also id.* at 63 (Mr. Kiefer stating, "[f]or some individuals, they may join the student leadership program [(the leadership program),] where we offer part-time employment … [in] essentially helping [the program staff] operate the open gym program.").

Mr. Keifer described Defendant's progress and leadership role in the program:

> [Defendant] has moved through the program faster than any other individual that we've worked with. … [A]t a really early stage[, Defendant] became a role model to other students and helped us manage the group.

*Id.* at 65. Mr. Keifer testified Defendant's progress was so impressive that Mr. Keifer (a) asked Defendant to join the leadership program, where Defendant has performed "excellently"; and (b) selected Defendant, out of more than 200 participants, to be the subject of an informational video about

the program. *Id.* at 69-70, 80; *see also id.* at 72 (Mr. Keifer stating, "In each of the programs that I've seen, [Defendant] has taken initiative."). Mr. Keiffer testified Defendant also volunteered for numerous public speaking engagements promoting the program, wherein Defendant talked "about what he's been through and what he may think could be done differently to support individuals in similar circumstances." *Id.* at 76-77.

The Commonwealth presented expert psychological testimony from Dr. Dattilio, who described his clinical interview of Defendant, review of Defendant's records, and psychological findings. *Id.* at 241-44; *see also id.* at 244 (Dr. Dattilio explaining that information regarding Defendant's participation in the program "was not available at the time that [Dr. Dattilio performed his interview of Defendant], which was … [on] September 13th, 2023."). Dr. Dattilio stated he "looked at all of the factors that I need to look at about treatment and rehabilitation within the juvenile system prior to the age of 21.[4] And that's the big hurdle in the room." *Id.* at 269 (footnote added). Dr. Dattilio testified he was "concern[ed] about whether or not [rehabilitation] can take place in this very short period of time…." *Id.* at 270. Dr. Dattilio opined, "I don't know that there is a guarantee that [rehabilitation is] going to be all finished when [Defendant reaches the age of] 21." *Id.* at 271; *see also id.* at 272 ("I don't know if it's enough time. I don't think it

_____

[4] We discuss below the factors Dr. Dattilio referenced.

is."). Dr. Dattilio elaborated, "[t]hat's why I'm testifying that to a reasonable degree of psychological certainty[,] I ... can't say that [Defendant] is completely amenable to treatment or rehabilitation prior to that demarcation." *Id.* at 272. *But see also id.* at 278 (Dr. Dattilio opining Defendant is "amenable to treatment and rehabilitation, but not before the age of 21.").

Defendant presented expert testimony from Dr. Timchak, who described his clinical interview of Defendant, review of Defendant's records, and psychological assessments and findings. *See id.* at 161-84. Dr. Timchak opined,

> [Defendant] would benefit from treatment, supervision, [and] rehabilitation in the juvenile justice system. And I was particularly impressed with Mr. Kiefer's testimony [as to] how well [Defendant] is doing.

*Id.* at 184. Dr. Timchak stated, "I think long term[, Defendant] is a young man who I firmly, wholly believe is amenable to treatment." *Id.* at 192; *see also id.* (Dr. Timchak testifying, "I think [Defendant's] exposure to more negative peers in an adult system is going to have a negative impact long term and not be beneficial to society.").

Significantly, Dr. Timchak confirmed it was his professional opinion that Defendant "can achieve a level of rehabilitation that would keep the public safe before the expiration of juvenile court jurisdiction[.]" *Id.* at 193. Dr. Timchak elaborated that he

> became more convinced [about Defendant's prospect of rehabilitation upon hearing] Mr. Kiefer's testimony. Again, although th[e program is] not a therapeutic program, it does

provide evidence that [Defendant] is able to respond favorably to those behavioral experiences.

*Id.*; *see also id.* at 194 (Dr. Timchak predicting Defendant would "respond favorably to a [] structured treatment rehabilitation program in the juvenile system in a fairly short amount of time.").

Finally, the Commonwealth presented testimony from Officer Rumsey, Defendant's juvenile probation officer. Officer Rumsey prepared a thorough "transfer report" in connection with the decertification hearing, following her interview of Defendant and review of his records. *Id.* at 302-03. Officer Rumsey testified she did not believe Defendant could be rehabilitated before the expiration of the juvenile court's jurisdiction: "I feel that [Defendant] needs more time for treatment, supervision, [and] rehabilitation than the two, a little over two years that [Defendant] has left." *Id.* at 314; *see also id.* at 312 (Officer Rumsey stating, "two years is not enough time for treatment in supervision. I feel like [Defendant] needs something a little bit longer and more intensive.").

The decertification court issued its ruling on the record at the conclusion of the decertification hearing. *See id.* at 368-84.[5] In sum, the decertification court concluded Defendant had met his burden of proving, by a preponderance of the evidence, that transferring his case to the juvenile division best served the public interest. *Id.* at 369 ("[T]his Court is finding that there are

---

[5] We discuss the decertification court's ruling in detail below.

reasonable grounds to believe that the public interest is best served by a transfer back to juvenile court."); ***see also*** 42 Pa.C.S.A. § 6322(a) (providing a petitioner requesting the transfer of their case to the juvenile division bears the burden "to establish by a preponderance of the evidence that the transfer will serve the public interest.").

By an order entered on November 17, 2023, the decertification court granted Defendant's petition for decertification.[6] The Commonwealth timely filed a notice of appeal.[7, 8] The Commonwealth filed a timely Pa.R.A.P.

---

[6] The decertification court did not issue a memorandum or findings of fact in connection with its order granting decertification.

[7] Orders "transferring a case from the criminal division to the juvenile division" are "immediately appealable as of right." ***Commonwealth v. Johnson***, 669 A.2d 315, 323 (Pa. 1995).

[8] The Commonwealth filed, contemporaneously with its notice of appeal, a separate certification pursuant to Pa.R.A.P. 311(d), representing that the decertification court's ruling "will terminate or substantially handicap the prosecution[.]" Rule 311(d) Certification, 11/20/23; ***see also*** Pa.R.A.P. 311(d) ("[T]he Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.").

1925(b) concise statement, after which the decertification court filed an opinion pursuant to Pa.R.A.P. 1925(a).[9], [10]

The Commonwealth presents a single issue for review: "Whether the [decertification] court erred in granting Defendant's petition for decertification?"  Commonwealth Brief at 4.

Our standard of review is well-settled: appellate courts

> must not upset the certification decision of a juvenile court unless the court has either failed to provide "specific reasons for its conclusion that the juvenile is not amenable to treatment" or "the court committed a gross abuse of discretion." *Commonwealth v. Moss*, 543 A.2d 514, 516 (Pa. 1988) (quoting *Commonwealth v. Stokes*, 421 A.2d 240, 243 (Pa. Super. 1980)).  The existence of facts in the record that would support a contrary result does not demonstrate a gross abuse of discretion.  *Id.* at 516.  To rise to a level of gross abuse of discretion, the court rendering the

---

[9] In its Rule 1925(a) opinion, the decertification court opined the Commonwealth waived its sole issue on appeal, since its vague Rule 1925(b) concise statement failed to "identif[y], with sufficient detail, the error to be raised on appeal."  Decertification Court Opinion, 1/16/24, at 3; *see also* Concise Statement, 12/12/23 (identifying the following claim of error: "Trial court erred in granting Defendant's petition for decertification.").  Rule 1925(b)(4)(ii) mandates that "[t]he Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge."  Pa.R.A.P. 1925(b)(4)(ii).  However, waiver is inappropriate because the "issue of certification between the juvenile and criminal divisions is jurisdictional and, therefore, **not waivable**." *Commonwealth v. Sanders*, 814 A.2d 1248, 1250 (Pa. Super. 2003) (emphasis added) (citing *Johnson*, 669 A.2d at 320-21).

[10] The decertification court stated in its Rule 1925(a) opinion that the reasons for its grant of Defendant's petition for decertification appeared in the decertification hearing transcript.  Decertification Court Opinion, 1/16/24, at 7 (noting the court attached the "relevant portion of the transcript" as an exhibit.  Further stating the court "find[s] no reason to alter or disturb" its decertification ruling "placed on the record"); *see also* N.T. (decertification hearing), 11/16/23, at 368-84.

adult certification decision must have misapplied the law, exercised unreasonable judgment, or based its decision on ill will, bias, or prejudice. ***Commonwealth v. Rush***, 562 A.2d 285, 287 n.1 (Pa. 1989).

***Commonwealth v. Jackson***, 722 A.2d 1030, 1032 (Pa. 1999) (citations modified); ***see also Sanders***, 814 A.2d at 1250 ("Decisions of whether to grant decertification will not be overturned absent a gross abuse of discretion."). "As an appellate court, we are unable to usurp a [decertification] court's credibility determinations." ***Commonwealth v. Ramos***, 920 A.2d 1253, 1260 (Pa. Super. 2007) (citation omitted).

The Juvenile Act provides that, except in the case of the most serious crimes,

> if it appears to the court in a criminal proceeding that the defendant is a child, … the court shall forthwith halt further criminal proceedings, and, where appropriate, transfer the case to the division or a judge of the court assigned to conduct juvenile hearings….

42 Pa.C.S.A. § 6322(a). However, "[i]n determining whether to transfer a case charging murder or any of the offenses excluded from the definition of 'delinquent act' in [42 Pa.C.S.A. §] 6302, [*supra*,] the child shall be required to establish by a **preponderance of the evidence** that the transfer will serve the public interest." ***Id.*** (emphasis added); ***see also Commonwealth v. Brown***, 786 A.2d 961, 967 (Pa. 2001) (stating a preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, "evidence to tip the scales slightly in favor of" the moving party (quotation marks omitted)). Instantly, because robbery is excluded from the definition

of "delinquent act," Defendant was not entitled to a transfer to juvenile court as a matter of right. 42 Pa.C.S.A. § 6322(a). To prevail on his decertification petition, Defendant had the burden of establishing that the transfer would serve the public interest. *Id.*

Subsection 6322(a) further requires a decertification court to "consider the factors contained in 42 Pa.C.S.A. § 6355(a)(4)(iii) (relating to transfer to criminal proceedings)." *Id.* Subsection 6355(a)(4)(iii) provides, in relevant part, that a decertification court may transfer a case,

> where appropriate, to the division or a judge of the court assigned to conduct criminal proceedings, for prosecution of the offense if …
>
> * * *
>
> (4) The court finds:
>
>   ….
>
>   (iii) that there are reasonable grounds to believe that the public interest is served by the transfer of the case …. In determining whether the public interest can be served, the court shall consider the following factors:
>
>     (A) the impact of the offense on the victim or victims;
>
>     (B) the impact of the offense on the community;
>
>     (C) the threat to the safety of the public or any individual posed by the child;
>
>     (D) the nature and circumstances of the offense allegedly committed by the child;
>
>     (E) the degree of the child's culpability;

- 13 -

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G) **whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors**:[11]

(I) age;

(II) mental capacity;

(III) maturity;

(IV) the degree of criminal sophistication exhibited by the child;

(V) previous records, if any;

(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

(VIII) probation or institutional reports, if any;

(IX) any other relevant factors[.]

42 Pa.C.S.A. § 6355(a)(4)(iii) (emphasis and footnote added). Although the Juvenile Act requires a decertification court to consider all of the foregoing factors, "it is silent as to the weight that should be assessed to each factor." ***Commonwealth v. Ruffin***, 10 A.3d 336, 339 (Pa. Super. 2010); ***see also***

---

[11] We hereinafter refer to the factors contained in subsection 6355(a)(4)(iii)(G) as "the amenability factors."

- 14 -

*id.* (stating that although a decertification court must consider all the subsection 6355(a)(4)(iii) factors, "it need not address, *seriatim*, the applicability and importance of each factor and fact in reaching its final determination."). Accordingly, the weighing process is entrusted to the sound discretion of the decertification court. *Id.*

"Furthermore, we presume the [decertification] court considered the entire record in making its determination, and it is not required to give a detailed explanation justifying its decision." *Commonwealth v. L.P.*, 137 A.3d 629, 636 (Pa. Super. 2016). This Court has recognized that

> [t]he presumption in this Commonwealth remains that if a court has facts in its possession, it will apply them. When evaluating the propriety of a certification decision, absent evidence to the contrary, a reviewing court must presume that the juvenile court carefully considered the entire record.

*Sanders*, 814 A.2d at 1251 (internal citations omitted).

Instantly, the Commonwealth argues the decertification court "erred in granting Defendant's petition for decertification[,] where there is significant evidence that the [] court failed to carefully consider the entire record before rendering its decision." Commonwealth Brief at 19. The Commonwealth claims the decertification court "misapplied the legal standard in determining whether Defendant [could be] rehabilitated prior to the expiration of juvenile [court] jurisdiction…." *Id.* at 22. Specifically, the Commonwealth points out that at the conclusion of the decertification hearing, the decertification court

> stated that "[Defendant] does not need to guarantee that [rehabilitation] will happen. He only needs to prove it by

- 15 -

preponderance of the evidence." [N.T., 11/16-17/23, at 383.] The decertification court is clearly wrong. *See Commonwealth v. Sourbeer*, 422 A.2d 116 (Pa. 1980) (in considering psychiatric testimony, if rehabilitation could not be **assured** during child's minority while subject to juvenile court jurisdiction, child has failed to establish that she was amenable to juvenile rehabilitation).

*Id.* at 22-23 (emphasis in original; paragraph break omitted).

According to the Commonwealth, the decertification court's "findings are not supported by the record. … Neither Officer Rumsey, Dr. Timchak, nor Dr. Dattilo opined that Defendant would be amenable to rehabilitation prior to the expiration of the juvenile court's jurisdiction." *Id.* at 24; *see also id.* at 25 ("[A]t best, Dr. Timchak stated that Defendant was amenable to rehabilitation and would make favorable progress."). The Commonwealth maintains the decertification court improperly disregarded "facts that support that Defendant has substantial treatment needs that cannot be resolved in the time remaining in the juvenile system." *Id.* at 29; *see also id.* at 28 ("[T]here is nothing of record to support that Defendant will be completely rehabilitated by his 21st birthday, and the [decertification] court's factual determinations do not support its legal conclusions.").

While it is certainly commendable that Defendant is doing well at the Bench Mark Program, such efforts do not translate as to an assurance that Defendant will be rehabilitated prior to the expiration of juvenile court jurisdiction.

*Id.* at 27; *see also id.* at 28 (claiming "the Bench Mark Program is not … [an] intensive therapeutic program.").

Defendant counters the decertification court properly granted Defendant's petition for decertification, and "the record reflects a thorough and thoughtful consideration of all the relevant factors." Defendant's Brief at 6 (bold omitted). Defendant claims the decertification court appropriately "made its decision after witnessing a classic 'battle of the experts' where two qualified witnesses reached opposite conclusions." *Id.* at 7.

> A decertification ruling can only be reversed where it constitutes a "gross abuse of discretion," and the [decertification] court's siding with one expert over another is a uniquely weak basis for finding an abuse of discretion—particularly given the court's wealth of experience with this subject matter.

*Id.* at 6 (bold and italics omitted); *see also id.* at 21 (Defendant asserting the decertification court appropriately "went through all the relevant considerations and sided with one expert over another in finding that decertification was appropriate. This was not an abuse of discretion.").

Defendant argues the Commonwealth misapprehends that a "juvenile need not establish with absolute certainty that he will be completely rehabilitated prior to termination of juvenile court jurisdiction in order to show amenability to treatment...." *Id.* at 8 (bold and italics omitted); *see also id.* at 8-9 ("The Commonwealth's principal claim—that the [decertification] court misapplied the law—depends on [the Commonwealth's] assumption ... that, to demonstrate his amenability to treatment, [Defendant] was obligated to prove with certainty that he would be completely rehabilitated before he turned 21."). Defendant points out that under the Juvenile Act, "a juvenile seeking

decertification bears a preponderance burden…." *Id.* at 9 (citing 42 Pa.C.S.A. § 6322(a), *supra*).

Our review of the record discloses that at the conclusion of the decertification hearing, the decertification court addressed in turn each of the amenability factors detailed above. *See* N.T., 11/16-17/23, at 375-84; *see also* 42 Pa.C.S.A. § 6355(a)(4)(iii)(G).[12] Initially, applying subsection 6355(a)(4)(iii)(G)(I), the court noted Defendant's age. N.T., 11/16-17/23, at 375 ("At the time of the [robbery, Defendant] was 17[;] he is now 18 and 4 months."). Next, the court addressed Defendant's mental capacity under subsection 6355(a)(4)(iii)(G)(II), finding his intelligence is average to above-average, and that he "show[s] some insight into his behaviors." *Id.*

The decertification court considered Defendant's maturity, under subsection 6355(a)(4)(iii)(G)(III). The court stated it

> found the testimony of Mr. Kiefer to be very compelling. [The court] also note[s] that, unfortunately, [neither] Ms. Rumsey when she did her report, nor [Dr. Dattilio or Dr. Timchak], had the benefit of Mr. Kiefer's testimony or the progress [Defendant] has made in th[e] program.

*Id.* at 375-76. The court emphasized, "Mr. Kiefer has indicated that [Defendant] has already changed his thinking." *Id.* at 377. The decertification court found that Defendant's

---

[12] The decertification court additionally considered each of the factors contained in 42 Pa.C.S.A. § 6355(a)(4)(iii)(A)-(F), *supra*. *See* N.T., 11/16-17/23, at 368-74 (considering, *inter alia*, the impact of the offense on the victims and the community, public safety, and Defendant's culpability).

amenability to treatment in the Bench Mark program and his demonstrated changes in his thinking from a victim of trauma to a survivor of lived experiences and a leader among his peers demonstrates a different level of maturity today than when the incident occurred.

*Id.* at 380.

The decertification court stressed that,

without the hard work that [Defendant] has engaged in in … [the] program, this would be a different decision by the court. However, actions speak louder than words. We can speculate about whether a juvenile is amenable to treatment, but it is hard to argue [with the fact that Defendant] went through th[e] program faster than his peers, that he became a leader among his peers, and that he was chosen as one [out] of 200 people as a model for the program, and that he is now engaging in community service testifying and providing information to judges, probation officers, and members of the House of Representatives on his lived experiences. That is a significant change in thinking and it is a demonstration of [Defendant's] amenability to treatment.

*Id.* at 378-79.

Next, the decertification court considered Defendant's criminal sophistication, under subsection 6355(a)(4)(iii)(G)(IV). The court found, "[t]he level of criminal sophistication is low. It takes no sophistication to point a gun at someone." *Id.* at 380.

The court also considered Defendant's "previous records" and prior delinquent history, pursuant to subsections 6355(a)(4)(iii)(G)(V) and (VI). The court found, *inter alia*, Defendant's "prior delinquent history was when he was 11 and he successfully completed treatment." *Id.* at 381. The court

further stated it "do[es] not find that [Defendant] is a hardened criminal who cannot be rehabilitated within the juvenile system." *Id.* at 382.

Significantly, the decertification court also considered whether Defendant can be rehabilitated prior to the expiration of the juvenile court's jurisdiction, pursuant to subsection 6355(a)(4)(iii)(G)(VII).

> Whether [Defendant] can be rehabilitated prior to the expiration of the juvenile court jurisdiction was the issue in this case. … [Defendant] does not need to guarantee [rehabilitation] will happen. He only needs to prove it by preponderance of the evidence. And his demonstrated amenability to the Bench Mark program goes a long way and is really the deciding factor for the court as it relates to that issue.

*Id.*; *see also id.* at 383 (decertification court observing Officer Rumsey "did not have the benefit of seeing [Defendant's] recent successes [in the program] in writing her report[,] as [her report] was done in April.").

In announcing its ruling, the decertification court stated:

> [Defendant] also presented[,] in addition to Mr. Kiefer's testimony[,] that he has a demonstrated amenability to treatment[;] the testimony from Dr. Timchack who also indicated that [Defendant] is amenable to treatment. Notably …, Dr. Dattilio[] also indicated that [Defendant] is amenable to treatment.
>
> We note that the standard here is preponderance of the evidence and the [c]ourt feels that [Defendant has] demonstrated amenability to the Bench Mark program, as well as the testimony from both experts, supports that he has met that burden.
>
> The reason why the [c]ourt has some questions about the testimony of Dr. Dattilio is that Dr. Dattilio testified that this was a close call. In making that close call, again, he did not have the benefit [] of [all of] the information provided in the treatment that [Defendant] has undergone. But Dr. Dattilio kept saying I … [decided] this way because I could not **guarantee** that

[Defendant] could complete the treatment. The standard is not guarantee, it is not mathematical certainty, it is not beyond a reasonable doubt. It is a **preponderance of the evidence**. And the court was … struck by [Dr. Dattilio's] repeated use of I can't guarantee, which is not the standard in this case. That is not the burden of proof.

*Id.* at 379-80 (emphasis added); *see also id.* at 271 (Dr. Dattilio opining, "I don't know that there is a **guarantee** that [rehabilitation is] going to be all finished when [Defendant reaches the age of] 21." (emphasis added)).

In its Rule 1925(a) opinion, the decertification court concluded it properly exercised its discretion in transferring Defendant's case to the juvenile division, reasoning as follows:

Following the decertification hearing …, th[e decertification] court placed on the record [its] reasons for finding that there are reasonable grounds to believe that the public interest is best served by a transfer back to juvenile court. [The court] extensively reviewed each factor laid out in 42 Pa.C.S. § 6355(a)(4); [the court] find[s] no reason to alter or disturb [its] original order…. … Th[e decertification] court found the testimony of [Mr.] Kief[]er … to be particularly compelling. It is clear to th[e decertification] court that the Defendant is amenable to treatment in the juvenile court system and has the capacity to significantly change his thinking moving forward, based on the steps he has already taken and the progress he has already made in the Bench[M]ark program.

Decertification Court Opinion, 1/16/24, at 7-8 (some capitalization modified).

Our review confirms the decertification court's conclusion is supported by the record, and we discern no gross abuse of its discretion in transferring Defendant's case to the juvenile division. The decertification court thoughtfully considered and applied all of the amenability factors (as well as Section 6355 as a whole), and made a reasoned determination upon

evaluating all of the evidence. *See L.P.*, 137 A.3d at 637 (appellate courts presume a decertification court considered the entire record when assessing the amenability factors); *see also Jackson*, 722 A.2d at 1032 (stating the "existence of facts in the record that would support a contrary result does not demonstrate a gross abuse of discretion."). The decertification court found the testimony and expert opinion of Dr. Timchak more credible than that of Dr. Dattilio; we decline the Commonwealth's invitation to disturb the court's credibility determination. *See Ramos*, 920 A.2d at 1260; *Commonwealth v. Furness*, 153 A.3d 397, 401, 404 (Pa. Super. 2016) (assessments of credibility and conflicts in the evidence are for the fact-finder to resolve; appellate courts may not reexamine credibility determinations or substitute their judgment for that of the fact-finder).

Finally, there is no merit to the Commonwealth's claim that the decertification court misapplied the law. *See* Commonwealth Brief at 22-23 (citing *Sourbeer*, 422 A.2d 116, in support of Commonwealth's claim the decertification court "applied the wrong legal standard in considering whether Defendant can be rehabilitated prior to the expiration of the juvenile court

jurisdiction.").[13]  In **Sourbeer**, the appellant shot and killed his mother when he was 14 years of age.  **Sourbeer**, 422 A.2d at 118.  After the Commonwealth charged appellant as an adult with first-degree murder, he filed a petition to transfer his case to the juvenile division, which the trial court denied.  **Id.** at 119.  The Pennsylvania Supreme Court affirmed the denial of decertification,[14] emphasizing that "[a]ppellant's own psychiatrist testified that he could give only a very rough and questionable estimate of how long it would take for [appellant] to overcome" appellant's "persistent" psychological disorder.  **Id.**  The Court elaborated:

> When the appellant's psychiatrist was asked to give a time period when there would be a significant change in [appellant's] personality disorder, he could only say that such a change could be expected in the vicinity of the ages thirty-five or forty.  This, coupled with the fact that appellant was fifteen years old and would therefore be subject to the authority of the juvenile system for only three more years, amply supports the denial of [appellant's] petition for transfer to Juvenile Court.

**Id.** at 120.

---

[13] The Commonwealth also cites **Commonwealth v. Cessna**, 537 A.2d 834 (Pa. Super. 1988).  Commonwealth Brief at 23.  The **Cessna** Court briefly cited **Sourbeer** for the proposition: "In considering psychiatric testimony, [] if rehabilitation could not be assured during the child's minority while subject to the juvenile court jurisdiction, the child has failed to establish that he was amenable to juvenile rehabilitation."  **Id.** at 839 (citing **Sourbeer**, 422 A.2d 116).  However, the foregoing language in **Cessna** does not appear in **Sourbeer**.  **See Sourbeer**, 422 A.2d at 119-20.

[14] The **Sourbeer** Court did not cite or apply 42 Pa.C.S.A. §§ 6322 or 6355.

Here, unlike the situation in **Sourbeer**, Dr. Timchak confirmed he was "convinced" that Defendant "can achieve a level of rehabilitation that would keep the public safe **before the expiration of juvenile court jurisdiction**[.]" N.T., 11/16-17/23, at 193 (emphasis added); **see also** 42 Pa.C.S.A. § 6355(a)(4)(iii)(G)(VII). Dr. Timchak further confirmed (a) Defendant "demonstrated a great deal of progress just in the short amount of time that he's been in the Bench Mark program"; and (b) "there can be a lot of progress achieved in [relatively short] timeframes…." **Id.** at 194. Accordingly, **Sourbeer** is inapposite.

Finally, we are persuaded by Defendant's argument that

> it would make no sense to conclude that amenability [to rehabilitation] cannot be shown—let alone that decertification is only allowed—where complete rehabilitation before 21 is an absolute certainty. In fact, psychologists and psychiatrists trade in predictions and projections; they do not make guarantees. And as the [decertification] court observed, [Defendant's] burden was the preponderance of the evidence—not an absolute guarantee. [The preponderance standard] is right there in the statute. 42 Pa.C.S.A. § 6322(a) [(providing a petitioner requesting decertification must "establish by a preponderance of the evidence that the transfer will serve the public interest.")].

Defendant's Brief at 10-11 (emphasis omitted; citation modified); **see also id.** at 11 (correctly pointing out that "the possibility of rehabilitation before age 21 is only one of" the amenability factors, "which, in turn[,] is only one of eight factors falling under the larger umbrella of 'the public interest.'" (citing 42 Pa.C.S.A. § 6355(A)(4)(iii))).

Based on the foregoing, we affirm the order granting Defendant's petition for decertification.

Order affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/23/2024